**Billy STEPHAN, Plaintiff-Respondent,**

v.

**WORLD WIDE SPORTS, INC., et al.,
Defendants-Appellants.**

**No. 56160.**

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1973.

Rehearing Denied Dec. 10, 1973.

Norman A. Selner, Clayton, James F. Koester, St. Louis, for respondent, Billy Stephan.

Roger L. Scherck, St. Louis, for appellants World Wide Sports, Inc. and Roger L. Scherck.

John C. Healy, St. Louis, for appellant, John C. Healy.

FRANK D. CONNETT, Jr., Special Judge.

This case arises out of contracts to manage prize fighters entered into between plaintiff Billy Stephan as manager and Don Cobbs and Charles Williams as fighters in the state of California in 1965. Plaintiff brought suit in St. Louis against defendants Roger Scherck, J. C. Healy and World Wide Sports, Inc., seeking $100,000 damages and $150,000 punitive damages he claims to have suffered because defendant World Wide Sports, Inc. entered into subsequent management contracts with Cobbs and Williams in violation of plaintiff's prior contracts, and that defendants have fraudulently and maliciously conspired with Cobbs and Williams to violate the terms of plaintiff's contracts. At the conclusion of plaintiff's evidence, the trial court sustained defendants' motion for a directed verdict. Plaintiff's motion for a new trial was sustained. The trial court found it had erred in granting the directed verdict on the grounds that the contracts between plaintiff and Williams and Cobbs were nullities. Defendants appealed to this court prior to January 1, 1972, and we retained jurisdiction pursuant to Mo.Const. Art. V, § 31, subsection 4, V.A.M.S.

Defendants not only contend that plaintiff's contracts with the prize fighters were nullities, they also contend that there was not sufficient evidence presented to make a submissible case against them; thus, we must set out the facts treating plaintiff's evidence and its reasonable inferences as true. Buxton v. Horn, 452 S.W.2d 250, 251 [3] (Mo.App.1970).

"A combination for the purpose of causing a breach of contract has been held to be an unlawful conspiracy. A person who by conspiring with another or by collusive agreement with him assists him to violate his contract with a third person and to obtain the benefit of that contract for himself commits an actionable wrong." Rosen v. Alside, Inc., 248 S.W.2d 638, 643 [4] (Mo.1952). Although plaintiff must prove this cause of action by clear and convincing evidence, the conspiracy may be shown by circumstantial evidence. It may be inferred from and proven by evidence showing the collusive and concerted actions of those alleged to be parties to it and the surrounding circumstances. Contour Chair Lounge Company v. Aljean Furniture Manufacturing Company, 403 S.W.2d 922, 927 [7] (Mo.App.1966).

The plaintiff, Billy Stephan, was an experienced professional prize fighter living in California. In late 1964 in St. Louis, plaintiff had a conversation with Carmen Durso, a longtime friend, and Donald Cobbs, a fighter, concerning the possibility of plaintiff managing Cobbs and some amateur fighters Durso was training. They

wanted to come to the west coast where fights were more plentiful.

In March, 1965, Carmen Durso wrote to plaintiff saying he had gone to work for defendant World Wide Sports, Inc., to handle their boxing program and that he and Cobbs were coming to California. He also wrote that defendant Roger Scherck wanted to meet him and discuss future fighters World Wide Sports might send to him. Durso came to California in August of 1965 with Cobbs, Charlie Williams and another fighter and contacted plaintiff, who made arrangements for their lodging and training and got Charlie Williams a job as a sparing partner.

On August 20, plaintiff, Durso and the three fighters went to the California State Athletic Commission and signed contracts. Durso and plaintiff were to be co-managers for Williams for three years and for Cobbs for seven years. Each was to receive one-half of one-third of the earnings of the fighters after training and travel expenses were deducted. At that time these fighters were already under contract to Durso, which had been made in May of 1965. Durso was at that time a vice-president of World Wide Sports, Inc. These contracts were prepared by Roger Scherck, but the contracts did not refer to World Wide Sports, Inc., or Durso's connection with World Wide Sports, Inc. Although plaintiff knew that Durso was connected with World Wide Sports, Inc., and World Wide Sports, Inc. had some interest in the fighters, the nature and extent of that interest was not revealed to him, nor does it appear in the record of the trial. Roger Scherck authorized Durso to go to California and enter into the contracts with plaintiff. World Wide Sports paid the travel expenses of Durso and the fighters incurred by the trip to California.

The California contracts provided:

"The Manager and the Athlete both certify and warrant to each other and to the said commission, to induce its approval thereof, that no other persons or party in any way or in any degree shares or participates in the ring earnings of the Athlete or in the Manager's or Athlete's portion of such earnings and that no oral or written agreement exists concerning such sharing or participation."

The contracts further provided:

"This contract is null and void if during its term either the Athlete or the Manager is not duly licensed by the said Commission."

At the time the contracts were signed, plaintiff and Durso applied for licenses to manage prize fighters for the year 1965, and these licenses were issued for the remainder of the year. The three fighters stayed in California until near the end of October, 1965. During this time plaintiff arranged four fights for Cobbs and two for Williams and two for the other fighter. He also procured jobs for them to work at between fights. However, plaintiff had difficulty managing the fighters and they left and went back to St. Louis. They never returned or fought for plaintiff again.

Shortly after arriving in St. Louis, Cobbs and Williams went to work for Scherck at a salary, operating a small grocery store in St. Louis owned by Scherck. In May of 1966, World Wide Sports entered into a contract with Charlie Williams to be his exclusive manager for ten years. World Wide Sports, Inc. arranged four fights for Cobbs in 1967 and one for Charlie Williams in 1967. All of this was done with the knowledge and participation of Scherck.

The evidence as to the defendant John Healy's personal participation in this matter is skimpy, vague and inconclusive. Defendant Healy was associated with Scherck in the practice of law and vice-president of World Wide Sports, Inc. In order to hold defendant Healy personally liable in this case, plaintiff must prove not only that Healy personally participated in the activities of the fighters with World

Wide Sports, Inc. after October, 1965, but that he had personal knowledge of the 1965 California contracts between the fighters and Durso and plaintiff, and that by the terms of the contracts Stephan had a right to manage the fighters and to receive one-sixth of the fighters' earnings no matter where they might fight. Rosen v. Alside, supra. Healy testified by deposition that he arranged fights for Cobbs in Detroit and Roanoke in 1967; that at the time of the Detroit arrangement, he knew there was "a contract or reported contract between Billy Stephan and Mr. Scherck." This is not sufficient evidence from which it could be inferred that Healy knew that the subsequent contract and fights by Cobbs were a violation of Cobbs' 1965 California contract with plaintiff. Thus, no submissible case has been made against defendant John Healy.

■ However, the evidence is that Roger Scherck did know of the terms of the California contracts and of the actions of World Wide Sports, Inc., which he directed in arranging these fights for Cobbs and Williams; and his knowledge is imputable to World Wide Sports, Inc. This evidence makes a submissible case against Roger Scherck and World Wide Sports, Inc.

This case is not unlike plaintiff's cited case of Contour Chair Lounge Company v. Aljean Furniture Manufacturing Company, supra. There, there was a concerted action between one Koerner and one Laskowitz and the Aljean Manufacturing Company in furtherance of Laskowitz' breach of a contract not to compete with plaintiff. Others connected with Koerner and Aljean but without knowledge of the actions of Koerner and Laskowitz, were dismissed. Here defendant Scherck acted in concert with Cobbs and Williams to breach their contract with plaintiff Stephan, while Healy, not a party to the conspiracy, is to be dismissed.

■ Defendants' next contention is that plaintiff does not have a cause of action because he entered into the California contracts with knowledge of defendant World Wide Sports' financial interest in the fighters. Defendants fail to cite any authority for such a proposition. Assuming defendant World Wide Sports did have a legal interest in the fighters and that plaintiff had knowledge of this interest, we fail to see how any knowledge by plaintiff of defendants' prior interest in the fighters would justify defendants' actions in conspiring with the fighters to break their contract with plaintiff, a contract which the defendant Scherck authorized Durso to make.

Defendants further contend that the California contracts were nullities because (1) plaintiff signed the contract warranting that no other person or party in any way shared in the earnings of the fighters or the manager and that no oral or written agreement to that effect existed, supra, and that this warranty was false and plaintiff knew it was false, and (2) the contract was null and void if during its term either the manager or the fighters were not licensed by the California Commission and plaintiff was not so licensed in 1966. The parties have briefed and argued issues of estoppel and waiver, but we do not reach these issues.

■ Assuming plaintiff's evidence to be true, this conspiracy for Cobbs and Williams to breach their contract with plaintiff began in 1965 when the fighters left California and returned to St. Louis and began to work in defendant Scherck's grocery store. When they were apparently unwilling to return to California and fight for plaintiff, there was no reason for plaintiff to renew his license for the year 1966. The contracts had already been breached by the fighters.

■ We do not find any evidence from which we could infer that defendant World Wide Sports, or anyone other than Durso, had a legal right to share in the earnings of the fighters. At the time they entered into a contract in California, plaintiff had no knowledge of the nature or extent of

Durso's arrangement with World Wide Sports, Inc., nor do we, from the evidence presented so far. All plaintiff was concerned with was that he was to receive one-half of the manager's end; i. e., one-half of one-third. Durso, by his previous contract, we must assume, had a right to one-third of the fighters' earnings. No reason has been submitted to us as to why Durso could not enter into a contract with Stephan to share this one-third with Stephan. There is no evidence of any agreement, written or oral, for anyone else to share in the proceeds of the fighters or the manager. We can only speculate as to the nature and extent of defendant World Wide Sports' interest in the fighters and Durso. There was evidence that World Wide Sports promoted fights and that Durso was a vice-president of World Wide Sports, but this would not give them a share of the fighters' earnings or of Durso's. Since no one other than the parties to the California contracts had a right to share in the earnings of the fighters or the managers, the warranty was not false.

Defendants' final contention is that plaintiff's motion for new trial was not placed in the trial court's file until August 28, 1970, and the court did not have the original motion before it when it heard the motion on August 19, 1970, and therefore he was substantially prejudiced thereby because the court did not have jurisdiction. The supplemental transcript clearly shows that the motion for new trial was filed in the circuit clerk's office on June 15, 1970. The defendants' attorney received a copy on June 12, 1970. The original motion was misplaced in the clerk's office. Although the court did not have the original motion before it on the day it was argued, it did have a copy. This was sufficient. On June 15, the day the motion for new trial was received in the clerk's office, the court obtained jurisdiction. Rule 43.01(j), now Rule 43.01(h), V.A.M.R. This jurisdiction continued until the motion for new trial was ruled on no mat-ter what happened to the original motion. The contention is denied.

The action of the trial court in sustaining plaintiff's motion for new trial as to defendant Roger Scherck and World Wide Sports, Inc., is affirmed. The plaintiff failed to make a submissible case against defendant John Healy and plaintiff's petition against him is ordered dismissed.

HENLEY, P. J., and FINCH, J., concur.

MORGAN, J., not sitting.