**EMCASCO INSURANCE COMPANY, Plaintiff,**

v.

**Melvin DAVIS, et al., Defendants.**

**Civ. No. 90–2082.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Dec. 12, 1990.

Robert L. Jones, III, Jones, Gilbreath, Jackson & Moll, Fort Smith, Ark., for plaintiff.

J. Randall McGinnis, Warner & Smith, Fort Smith, Ark., Jeffrey E. Levin, Clarksville, Ark., John Bynum, Bynum & Bourne, Russellville, Ark., Julius C. Acchione, Acchione & King, Donald S. Ryan, Dodds, Kidd, Ryan & Moore, Little Rock, Ark., William F. Smith, Mobley & Smith, David L. Gibbons, Gibbons & Walker, Russellville, Ark., Tim Boone, Huckabay, Munson, Rowlett & Tilley, Little Rock, Ark., Thomas

B. Pryor, Pryor, Barry, Smith and Karber, David R. Ferguson, Mark W. Webb, Asst. U.S. Attys., Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Statement of the Case

This action was instituted by Emcasco Insurance Company by the filing of a complaint in interpleader. It is unclear from the complaint whether the action is filed under the provisions of Rule 22 of the Federal Rules of Civil Procedure or the statutory interpleader provisions of 28 U.S.C. §§ 1335, 1397, and 2361. It is, however, clear that the court has subject matter jurisdiction of this matter and that the venue is proper irrespective of whether the insurance carrier intended to proceed by means of statutory interpleader or the interpleader procedure authorized by Rule 22.

Emcasco issued a liability insurance policy covering a vehicle owned by Mike and Judy Gronstal with policy limits of $65,000. According to the complaint, the insured vehicle driven by insured Mike Gronstal was involved in a serious automobile accident on June 28, 1989, causing serious personal injuries to Melvin Davis and Dovie Davis.

When it became apparent that medical expenses incurred by Mr. and Mrs. Davis would far exceed the policy limits, this interpleader action was filed, naming the Gronstals, the Davises and numerous medical providers, as well as another insurance carrier (State Farm Mutual Automobile Insurance Company, which had paid some of the medical expenses) and the Secretary of the United States Department of Health and Human Services (Medicare) as defendants.

Emcasco paid the policy limits into the registry of the court and requested an order of the court "discharging it from all further liability to the defendants and from the duty to defend any lawsuits which may have been or may be filed for bodily injury and property damage against Michael Gronstal, and requiring the defendants to interplead herein and to assert their claims to the interpleaded funds or forever be barred." The carrier also sought an award of reasonable attorney's fees incurred in the interpleader action.

Most of the named defendants filed answers or other pleadings making claims for medical expenses exceeding $160,000. Subsequently, Emcasco requested that the court restrain the Davises from proceeding in a state court action which had been filed seeking damages from Michael Gronstal for their injuries suffered. Before that matter could be heard and decided, the court was advised that the Gronstals had filed bankruptcy, and that there was no longer need for a restraining order.

By a letter to the attorneys for the parties, the court suggested that it appeared from the file that there was no question of fact to be determined by a trier of fact, and sought consent that the issues could be decided by the court on the file before it. The attorneys for several parties specifically advised the court by letter that they agreed with the court's suggestion, and no party objected to that procedure.

Therefore, the court understands that all parties have agreed that the issues may be decided by the court on the record now before it. In view of that, although several parties have filed various motions and other pleadings, including certain discovery requests, a motion for summary judgment, and various cross-claims and counterclaims, the court believes that the issues to be decided, on the record presently before the court, are:

a) Whether Emcasco is entitled to an order discharging it from further liability on the insurance policy issued by it, including any further duty to defend its insured;

b) Whether it is entitled to an award of attorney's fees and expenses, and, if so, the amount of such award; and

c) A determination of the distribution to be made of the amount in the registry of the court.

Those issues will be discussed in turn below.

*Is Emcasco Entitled to an Order Discharging It From Further Liability on the Insurance Policy It Issued Including Any Further Duty to Defend Its Insured?*

■ The insuring agreement in the policy of insurance provides:

INSURING AGREEMENT

A. We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the 'insured.' We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for 'bodily injury' or 'property damage' not covered under this policy.

■ Of course, a policy of insurance is nothing more than a contract between the insurance carrier and its insured, and it is to be governed by the ordinary rules of interpretation of contracts. 12 G. Couch *Couch on Insurance 2d,* § 45:294 at 620 (1981), and *Perkins v. Clinton State Bank,* 593 F.2d 327 (8th Cir.1979). The law is well settled in Arkansas that the language used in an insurance policy is to be construed in its "plain, ordinary, popular" sense. *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689, 691 (1984).

Thus, the question becomes whether the insurance carrier and its insureds agreed, through the provision quoted above, that the insurance carrier could meet its obligations to the insured by filing a lawsuit in federal court, naming the insureds and persons and entities that might claim damages as the result of a covered accident as defendants, and paying its policy limits into the registry of the court, leaving the insureds to fend for themselves.

A fair reading of the insuring agreement is that the insurance carrier agreed that it would:

a) Pay damages for which the insureds became *legally* responsible;

b) Pay all defense costs incurred in settling or defending claims against the insureds; and

c) Continue to pay damages for which the insureds were legally responsible and continue to provide a defense to insureds until the limits of liability had been exhausted by the payments of damages for which the insureds were *legally* responsible.

The insurance carrier and the insureds did not agree that the insurance carrier could rid itself of the liabilities assumed by it and contracted for by the insureds by the carrier filing a lawsuit in federal court and dumping the policy limits into the registry of that court, thus abandoning the insureds. If the insurance carrier had intended that it have that option, it could have said so in plain and unmistakable terms so the insureds and others like them could determine whether they wanted to do business with that insurance carrier or some other carrier that would provide them with more meaningful protection.

This court firmly believes that, when the average insurance purchaser goes into an agent's office and purchases an insurance policy, he intends to purchase more than the policy limits afforded. In addition to protection to the extent of those policy limits, the insureds desire, need, and purchase much more than that. In addition to the right to a defense specifically set forth in this policy and others like it, insureds intend to hire the expertise of that carrier to take care of them in times of need, and they rightfully believe that the insurance carrier has agreed to provide those services. They expect, and the insurance carrier agrees to provide, expert assistance in the administration of claims made against them. They contracted for experts within the insurance company to collect and assimilate all of the information necessary after an accident to determine whether they are liable and, if so, the dollar amount of their

liability. They contract for the services of the insurance carrier in attempting to settle claims made against them and, if that proves not to be possible, to defend them in lawsuits that are filed. They do not contract for an insurance policy in which an insurance carrier quickly assesses the claims against them and "throws in the towel", providing them with none of the services that they contracted for and expected except provision of the liability limits dumped into a court, leaving them dangling at the mercy of claimants with substantial claims to make against them.

In this court's view, not only does the average insurance purchaser purchasing an insurance policy not intend that the insurance carrier hired by it have the right to meet its obligations by the simple expediency of paying the money into the registry of the court and blithely walking away from the duties it assumed when it issued the policy, the language of this policy does not authorize that. The insurance carrier agreed that it would, to the limits of the liability provided by it, pay any damages for which the insured "becomes legally responsible because of an auto accident" and to settle or defend any claims made, paying the costs incurred in making such settlements or defending such claims. It agreed that it would continue to provide those services until "our limit of liability for this coverage has been exhausted" by payment of those claims for which the insured was "legally responsible". The insurance contract, of course written by the carrier, did not provide that it can exhaust its limits of liability in any manner other than through the payment of claims for which the insured is "legally responsible". The insurance carrier's contract does not by its terms permit it to artificially exhaust the limits of liability by paying them into the registry of the court and walking away, leaving the insured without the carrier's assistance to accomplish all of those things that they rightfully thought that they had hired the insurance company to do for them.

Included in those things that the insureds hired the carrier to do for them is the defense of expensive lawsuits necessary to determine whether they are "legally responsible" for particular claims made against them. The insurance carrier agreed to pay the costs of providing a defense to these lawsuits until a determination was made as to which of the claims the insureds were legally responsible to pay and until the limits of liability had been exhausted through payment of those claims. While in excess of $160,000 in claims have been submitted, no determination has been made that Michael Gronstal is "legally responsible" for a single one of them, and not one has yet been paid.

In short, the court holds that Emcasco may not shed itself of the duties which it contracted to provide by paying the policy limits into the registry of the court. In so doing, it has not "exhausted" its limits by the payment of claims for which the insureds are "legally responsible because of an auto accident" as required by the terms of the very policy issued and written by the carrier. The limits aren't "exhausted". They are lying over in the clerk's office, right where the insurance company put them.

■ The court believes that the interpretation of the policy set forth above is a fair one, based on the language employed by the carrier when it drafted the policy. Of course, the law in Arkansas and most jurisdictions is that ambiguous provisions of an insurance policy will be construed against the insurance company that drafted it. See *Aetna Casualty & Sur. Co. v. Stover*, 327 F.2d 288 (8th Cir.1964); *Reiter v. State Farm Mut. Auto. Ins. Co.*, 357 F.Supp. 1006 (E.D.Ark.1973); *Countryside Casualty Co. v. Grant*, 269 Ark. 526, 601 S.W.2d 875 (1980).

Although there are several cases to the contrary,[1] the court believes that the better reasoned cases construing identical or similar language are in accord with the court's

1. For cases construing similar provisions, *see* Annotation, *Liability Insurer's Duty to Defend Action Against an Insured after Insurer's Full*

*Performance of its Payment Obligations under Policy,* 27 A.L.R.3d 1057 (1969).

interpretation in this case. In *Stanley v. Cobb*, 624 F.Supp. 536 (E.D.Tenn.1986), the court was faced with interpreting a policy provision identical to the one in this case. After first pointing out that the contract of insurance gave the insurance carrier the option of either settling claims made against the insured or defending them, the court said:

> In view of the stated two options, this Court is of the opinion that the limit of liability may not be exhausted in a manner other than that specified by the policy, *i.e.*, to either settle or defend.

*Id.* at 537. Another well-reasoned case construing identical language is *Anderson v. United States Fidelity & Guar. Co.*, 177 Ga.App. 520, 339 S.E.2d 660 (1986). In words particularly appropriate to this case, the court said:

> There is no intimation in the policy that its duty to defend may be satisfied by merely paying into court the applicable policy limits. To read the policy otherwise would render a near nullity a most significant protection afforded by the policy—that of defense. We do not agree with the appellee that the term 'exhaust' encompasses the paying into court of the policy limits but interpret that term to mean the payment either of a settlement or of a judgment wholly depleting the policy amount.

*Id.* 339 S.E.2d at 661 (citation omitted).

Other cases construing identical or nearly identical language and in accord with this court's construction of the policy provisions in this case are: *Utah Power & Light Co. v. Federal Ins. Co.*, 711 F.Supp. 1544 (D.Utah 1989); *Samply v. Integrity Ins. Co.*, 476 So.2d 79 (Ala.1985); *Aetna Insurance Co. v. Borrell–Bigby Electric Co.*, 541 So.2d 139 (Fla.App.1989); and *Brown v. Lumbermens Mutual Casualty Co.*, 90 N.C.App. 464, 369 S.E.2d 367 (1988).

Other authors writing on the subject have indicated that insurance carriers are not usually permitted to foist the defense responsibility onto their insureds by paying their policy limits into the registry of the court and walking away from the controversy. Professor Appleman, in 7C, *Apple-man Insurance Law and Practice* § 4682 at p. 36 (Nrtfs; rf/ 1979), in discussing the relative responsibility of the primary carrier and the excess carrier, after first pointing out that some courts have required insurance carriers to provide a defense irrespective of the exhaustion of the policy limits, explained:

> [I]t was a way to make sure the insurer would not abandon the insured by simply depositing its limits in court and leaving the insured with litigation and possible appeals. Despite the 1966 and subsequent revisions, the primary insurer may not walk away from the insured by paying relatively low limits into court and abandon the insured with a substantial judgment simply because the cost of appeal or other handling may be formidable. The insured's interests may demand continued protection despite threatened exhaustion of the primary limits. It should be noted that the cost of investigation and a trial can be substantial and will be borne by the primary carrier.

*Id.* (footnote omitted).

Similarly, in § 4691 at p. 274–75, Professor Appleman said:

> Following the 1966 and 1972 policy revisions, generally, once the primary insurer exhausts its policy limits either by way of settlement or payment of judgment, *and not by payment into court*, it has no further duty to defend and the costs of further defense will lie with the excess insurer.

(citations omitted) (emphasis in the original).

In 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 1713, at p. 576 (1986) the author, after discussing at some length the efficacy of an interpleader action in a case such as this one, said: "Similarly, an insurer, by resorting to interpleader in a federal court and depositing the proceeds of the policy with the court, should not be relieved of his contractual obligation under state law to defend the insured." (footnote omitted).

This court's interpretation of the policy provisions in question also, in the court's view, makes sense. In the first place, that

interpretation carries into effect what must have been the intent of the purchasers of the insurance at the time that the policy was purchased, and the intent of the insurance carrier as expressed in the language drafted by it. Additionally, if insurance carriers are permitted to do what the carrier attempted to do in this case, there would be many accidents in this state in which the most economical thing to do would be for the insurance carrier to pay its limits into the registry of the court and "go home".

By statute, Ark.Code Ann. § 27–22–104 (1987), Arkansas requires only coverage of $25,000 in order for a person to operate a motor vehicle in this state. Thus, there must be numerous policies with this minimal coverage issued by carriers doing business in Arkansas. In this day and time it does not take much of a lawsuit to incur expenses well in excess of that amount in defense costs alone. If insurance carriers can shield themselves from these expenses by simply paying their low policy limits into court and telling their insureds to take care of their own problems, why would an insurance carrier ever defend a serious lawsuit where it provided only the minimum coverage required by the statute? It is likely that they would not and that would especially be true if the insurance carrier is permitted to be reimbursed for its attorney's fees incurred in filing the interpleader action out of the money paid into the registry of the court as the carrier in this case has requested. It would push all of its responsibilities and expenses onto the shoulders of others and get paid for doing it.

For these reasons, this court finds that the insurance policy issued in this case does not permit the insurance carrier to walk away from its obligations by paying the limits of its liability into the registry of the court.[2]

Where does that leave us in view of the holding of the United States Supreme Court in *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967), a case in which the Court specifically held that interpleader in federal court was a proper remedy for insurance carriers faced with multiple claims?

Although the Court in *Tashire* authorized insurance carriers to file interpleader actions and to pay their limits into the registry of the court in cases such as this one, other holdings of that case raise serious questions about the efficacy of such a procedure. The Court went on to specifically hold that the court where the interpleader action was filed could not require all parties making claims to litigate their claims in that court. Instead, the Court said that claimants had a right to choose the forum in which to establish their claims. 386 U.S. at 535–36, 87 S.Ct. at 1206–07. *See also* the discussion of that case and this issue in 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* § 1717 at 618 (1986).

Thus, although the plaintiff in this case was entitled to file this interpleader action and is entitled to maintain it, the court may not distribute the funds deposited until all claimants have either made and proved their claims in this court, or reduced their claims to judgment by litigation in other courts of their choosing. Since the court has held that the limit of liability provided by the insurance policy in question has not been "exhausted" by payment of the coverage amount into the registry of the court, the plaintiff is not entitled to an order of the court relieving it from its duty to de-

**2.** The attorney for the plaintiff has provided the court with two unpublished opinions written by another judge of this court which permitted the insurance carrier in those cases to be relieved from further responsibility by depositing their policy limits in an interpleader action. *Economy Preferred Ins. v. Wright,* Civ. No. 88–2078, 1988 WL 220990 (W.D.Ark.1988) and *Farmers Ins. Co., Inc. v. Mitchell,* Civ. No. 88–2100, —— F.Supp. —— (W.D.Ark.1989). However, the court believes that the holding in those cases

can be distinguished from this court's holding. In the first place, since the opinions are not published, they are of questionable precedential value. Additionally, the provisions being interpreted were different than the provision in this case. In *Economy* the duty to defend ended when coverage had been "tendered or exhausted". The policy in *Farmers* was also different, providing only that the duty to defend ended after the carrier had "paid the limit of liability for coverage".

**1464**

fend any lawsuits which have been filed or are later filed against the insured, Michael Gronstal. Instead, for the reasons discussed above, the court interprets the policy of insurance in question to require the insurance carrier to provide Mr. Gronstal a defense of any claims made or lawsuits filed against him until the policy limits are exhausted by distribution of the amount in the registry of the court to be made after all claims of the defendants are proved and submitted to the court.

*Is the Insurance Carrier Entitled to an Award of Attorney's Fees and Expenses Incurred in Bringing the Interpleader Action?*

 Not only does the insurance carrier seek an order of this court finding that it has no duty to provide the services to the insured that it contracted to provide, it seeks an award of its costs and attorney's fees incurred in its attempt to obtain that order.

As is pointed out in 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1719 at p. 629 (1986), neither Rule 22 nor the interpleader statutes contain an express reference to costs and attorney's fees. However, as indicated in that article, courts have discretion to award costs and attorney's fees in appropriate interpleader cases "whenever it is fair and equitable to do so". *Id.* at 630. *See* cases cited at footnote 5 of the Wright & Miller article cited above. As that article goes on to say, at p. 632:

> [C]osts and fees will not be allowed as a matter of course. Typically they are available only when the party initiating the interpleader is acting as a mere stakeholder, which means he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability.

(footnotes omitted).

That did not occur in this case. As already discussed, what the insurance carrier has sought to do is to utilize the court to absolve it of substantial responsibilities which were assumed by it in the contract of insurance which it issued. It is not, by any means, a mere stakeholder, since it has a great deal of interest in the outcome of the case. Its interest is that it be relieved of providing the insured with the services detailed above, and the claimants be enjoined from pursuing any claims which they may have as a result of a covered automobile accident.

This is not a traditional interpleader action in which a stakeholder finds itself confronted with conflicting claims to the same thing. In those cases, the stakeholder's only interest is to deposit the "thing" with the court, caring not what happens to it, and requesting no relief other than that the parties making conflicting claims to the thing not be permitted to pursue the stakeholder further.

Emcasco, in this case, had a great deal of self interest in filing the case. It seeks to gain a great deal of benefit from it since it hoped to save defense and administrative costs which it contracted to provide in respect to covered automobile accidents. This is unlike, for example, the situation of an insurance carrier which wrote a life insurance policy on the life of a deceased and is faced by claimants who make conflicting claims to the proceeds. In that case, the life insurance company only agreed to pay the insurance proceeds, and it is willing to do that. It pays the proceeds into court and asks only that the court require the claimants with conflicting claims to present them in that court. It does not ask that it be relieved of its responsibility contained in other provisions of the contract of insurance.

This court holds that, because this interpleader action was brought primarily in Emcasco's self interest, it is not entitled to an award of attorney's fees and costs.[3] In

---

**3.** There are several cases in accord. *See,* for example, *Sun Life Assurance Co. v. Thomas,* 735 F.Supp. 730 (W.D.Mich.1990); *Cogan v. United States,* 659 F.Supp. 353 (S.D.Miss.1987); *Fidelity Bank v. Commonwealth Marine & Gen. Assur-* *ance Co.,* 592 F.Supp. 513 (E.D.Pa.1984); *Prudential Property and Casualty Co. v. Baton Rouge Bank & Trust Co.,* 537 F.Supp. 1147 (M.D. Ga.1982); *Minnesota Mut. Life Ins. Co. v. Gustafson,* 415 F.Supp. 615 (N.D.Ill.1976); and *Mary-*

the words of the court in *Fidelity Bank v. Commonwealth Marine & General Assur. Co.,* 592 F.Supp. 513, 527 (E.D.Pa.1984):

> When a stakeholder has used the court to aid it in making a decision which is an ordinary one in the course of the stakeholder's business, an award of attorney's fees is not appropriate in the circumstances. Such an award would constitute a shifting of some of the stakeholder's ordinary business expenses to the claimants.

(citations omitted).

For these reasons, plaintiff's request that it be awarded attorney's fees and costs incurred in bringing this interpleader action will be denied.[4]

### Conclusion

A judgment will be entered contemporaneously with the filing of this memorandum opinion, denying Emcasco's request that it be relieved from its duty to defend any lawsuits which may be filed against its insured, Michael Gronstal, for bodily injuries and property damage resulting in the automobile accident which occurred on June 28, 1989. Such plaintiff's request for attorney's fees and costs incurred in bringing this action will also be denied.

Because the claims of all defendants are not yet before the court, a distribution of the amount in the registry of the court cannot now be made. The court understands that all claims to be made by such claimants are now before the court with the exception of claims to be made by Melvin Davis and Dovie Davis. As soon as these claims are presented to the court, a distribution of the amount held by the court will be made, and this matter dismissed.

---

*land Casualty Co. v. Sauter,* 377 F.Supp. 68 (N.D.Miss.1974).

**4.** It may be that the insureds are entitled to recover their attorney's fees incurred in defending this action. *See* Ark.Code Ann. § 23–79–209. However, the Gronstals have not requested such an award.