**Phyllis (Inman) FREEMAN and Jennifer R. Tobin, Plaintiffs–Appellants,**

v.

**LEADER NATIONAL INSURANCE COMPANY, Louis J. Basso, Brown & James, P.C. and Rabbit, Pitzer & Snodgrass, P.C., Defendants–Respondents.**

**Nos. ED 78679, ED 78716.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 7, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2001.

Application for Transfer Denied
Nov. 20, 2001.

---

1. The statute is worded to apply to employees of state agencies.

Lawrence W. Ferguson, Columbia, MO, Joseph W. Rigler, Rolla, MO, for appellants.

Thomas B. Weaver, John Gianoulakis, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Presiding Judge.

Plaintiffs Phyllis Inman Freeman and Jennifer Tobin Harcrow appeal the trial court's grant of summary judgment to defendant Brown and James, P.C. (Brown & James). Because the Plaintiffs had voluntarily dismissed their petition against Brown & James, the trial court was without jurisdiction to grant summary judgment. Thus, as to the summary judgment, we reverse and remand.

Plaintiffs further appeal the trial court's dismissal of their petition for failure to state a cause of action against Leader National Insurance (Leader). In their petition, Plaintiffs allege that their rights to sue were received by assignment from a party to a prior declaratory judgment. Because the assignor's causes of action preserved for our review were precluded by the prior declaratory judgment, Plaintiffs' petition does not state a cause of action against Leader. We affirm the dismissal.

### Facts

This lawsuit has its origins in a May 1990 automobile accident, in which Gary Claus's car struck a car containing four persons. Phyllis Freeman's son, Randy Williams, was killed in the accident and Jennifer Tobin was injured. Claus was intoxicated at the time of the accident, and pleaded guilty to two charges of involuntary manslaughter as a result of the accident.

Claus's liability insurance policy, issued by Leader, had policy limits of $25,000 per person and $50,000 per accident. The policy provided as follows:

We will pay damages for bodily injury or property damage for which you become legally responsible....

The policy also provided:

We [Leader] will pay for the cost of investigating the auto accident and arranging for the settlement of any claim against you. We will also defend you, hire and pay a lawyer and pay all defense costs if you are sued by someone for damages because of an auto accident even if the accusations are not true....

We may investigate and settle any claim or suit as we think appropriate. We will not be obligated to pay for the cost of any further investigation or arrangement for settlement or defend you further after we have paid our entire limit of liability.

This coverage°does not apply to anyone if he, or his legal representative, settles a claim without our consent.

Leader hired Brown, James & Rabbitt[1] to defend Claus in a lawsuit filed in Dent County by William Tobin, as next friend of Jennifer Tobin. Leader issued a check for $50,000, the limit of liability under Claus's insurance policy. Brown, James & Rabbitt handled the case and filed a counterclaim for interpleader on behalf of Claus, added all parties that might assert claims against Claus, and deposited the $50,000 into the court's registry. In August 1991, the Dent County Court entered its judgment in interpleader apportioning Claus's

---

1. During the pendency of the lawsuit, Brown, James & Rabbitt split to form Brown & James and Rabbitt, Pitzer & Snodgrass. Louis Basso, Claus's attorney, began employment with the latter law firm. Brown & James, then formally withdrew from the Tobin action in March 1991, and Rabbitt, Pitzer & Snodgrass entered their appearance in the case. Although Plaintiffs' petition names as defendants Basso individually, as well as Brown & James and Rabbitt, Pitzer & Snodgrass, we need only consider Plaintiffs' claims against Brown & James for purposes of this appeal.

$50,000 policy limits among the four occupants injured in the accident with Claus. The court stated in its judgment that the claimants were free to proceed against Claus, with the amounts of their recoveries subject to a setoff.

Prior to the court's entry of judgment in interpleader, Leader filed a petition for declaratory judgment against Claus, who was then incarcerated, seeking a declaration that its duty to defend and indemnify Claus under the insurance policy had been fully discharged with the payment of its $50,000 policy limit into the court registry. The court entered declaratory judgment on March 17, 1992, finding that Leader had no further duty to defend Claus. The court, however, did not declare that Leader had no further duty to indemnify. Pursuant to the declaratory judgment, Rabbitt, Pitzer & Snodgrass sought leave to withdraw their representation of Claus, and Brad Eidson was appointed as a trustee to represent Claus in both the Tobin and Freeman lawsuits, pursuant to RSMo. section 460.100.[2]

In October 1991, Phyllis Freeman filed suit against Claus in Dent County for the wrongful death of Randy Williams; the Freeman case went to trial in August 1993. Claus did not appear, and no attorney appeared on his behalf. Following the trial, a judgment was entered for Freeman in the amount of $800,000. Claus or his representatives then unsuccessfully demanded that Leader settle within the policy limits.

The Tobin case then went to trial in September 1995. Claus, who was out of prison at the time of trial, filed a declaration with the court that he did not intend to appear and no attorney appeared on his behalf. A judgment was entered for Tobin in the amount of $2,500,000. Claus or his representatives then unsuccessfully made a demand on Leader to settle for $17,500.

Following both the Freeman and Tobin trials, Claus filed for Chapter 7 bankruptcy. The bankruptcy trustee then assigned to Freeman and Tobin the right to bring all claims Claus possessed against Leader, Basso, Brown & James, and Rabbitt, Pitzer & Snodgrass. As a result, Plaintiffs brought the present case pursuant to the bankruptcy court's assignment. In their petition, both Freeman and Tobin allege Leader failed to settle their claims within Claus's policy limits and therefore Leader incurred liability for the judgments rendered. Plaintiffs also allege that at the time of trial, Leader's policy limits had not been exhausted and thus Leader wrongfully failed to provide Claus with a defense in both lawsuits. Further, Plaintiffs' petition asserts that Leader, Basso, Brown & James, and Rabbitt, Pitzer & Snodgrass breached their fiduciary duties. Lastly, Plaintiffs pleaded legal malpractice claims against Basso, Brown & James, and Rabbitt, Pitzer & Snodgrass.

Motions to dismiss were filed by all defendants. The trial court entered an order dismissing Plaintiffs' breach of duty-to-settle, duty-to-defend, and fiduciary-duty claims against Leader for failure to state a cause of action and overruling the motions as to defendants Basso, Brown & James, and Rabbitt, Pitzer & Snodgrass; those three defendants then filed motions for summary judgment against Plaintiffs. On October 16, 2000, Plaintiffs took a voluntary dismissal without prejudice against defendants Basso, Brown & James, and Rabbitt, Pitzer & Snodgrass in order to appeal the court's dismissal of their claims

---

**2.** Section 460.100 states in pertinent part that a trustee may defend all actions commenced against a convict.

against Leader. On October 23, 2000, the trial court granted Brown & James's motion for summary judgment, but denied summary judgment to both Rabbitt, Pitzer & Snodgrass and to Basso. Plaintiffs now appeal the trial court's dismissal of their petition against Leader and the grant of summary judgment to Brown & James.

### Analysis

We now examine the gravamina of Plaintiff's complaints on appeal. First, Plaintiffs contend the trial court erred in granting summary judgment to Brown & James because the court lacked jurisdiction given Plaintiffs' previous voluntary dismissal without prejudice against Basso, Brown & James, and Rabbitt, Pitzer & Snodgrass. Second, according to Plaintiffs, the court erred in dismissing their claims against Leader for breach of duty to settle, breach of duty to defend and breach of fiduciary duty based upon Plaintiffs' failure to state a cause of action.

### *Plaintiffs' Voluntary Dismissal Against Brown & James*

■ First, we address whether the trial court had jurisdiction to grant summary judgment to Brown & James given Plaintiffs' previous voluntary dismissal without prejudice against Brown & James. Defendant argues that although Plaintiffs' voluntary dismissal memorandum was received on October 16, 2000, by the circuit clerk's office cashier located on the first floor of the civil courts building, the voluntary dismissal was ineffective because it was not properly filed in the third-floor clerk's office. Therefore, according to Brown & James, the trial court retained jurisdiction to later enter summary judgment on October 23, 2000. We disagree.

■ A plaintiff's voluntary dismissal pursuant to Rule 67.02(a) is effective as of the date it is filed. *Thornton v. Deaconess*

*Medical Cntr.–West Campus,* 929 S.W.2d 872, 873 (Mo.App. E.D.1996). And after a case is dismissed, the trial court may take no further action and any step attempted is viewed as a nullity. *Curators of the University of Missouri v. St. Charles County,* 985 S.W.2d 810, 814 (Mo.App. E.D.1998). In other words, the trial court loses jurisdiction as of the date of dismissal. *Liberman v. Liberman,* 844 S.W.2d 79, 80 (Mo.App. E.D.1992).

Here, the record reflects that Plaintiffs' voluntary dismissal, notice of appeal against Leader, and docketing fee check were filed with the circuit clerk's office cashier on October 16, 2000. Further, it is undisputed that the parties knew of Plaintiffs' intent to dismiss their case prior to the court's October 23, 2000 entry of summary judgment to Brown & James. These facts are clearly distinguishable from the sole case relied on by defendant Brown & James, *Thornton v. Deaconess Medical Center–West Campus.* There, the court relied on the fact that the record was devoid of any evidence of the alleged filing of a voluntary dismissal and the court could not merely accept the parties' statements that a valid dismissal was filed as a substitute to an actual record entry. 929 S.W.2d at 874. That is not our case. We are not forced to rely on the parties' statements as to whether a voluntary dismissal was filed. Here the record indicates that Plaintiffs' voluntary dismissal was filed in the circuit clerk's office.

■ Further, Rule 43.02(b) provides that filings "shall be made by filing them with the clerk of the court." A motion is considered filed when "delivered to the proper officer and lodged in his office." *Ely v. Parsons,* 399 S.W.2d 613, 619 (Mo. App. E.D.1966). Therefore, the critical date is the date the motion is delivered, and the document's disposition by the clerk's office is not the responsibility of the

person filing the document. *Euge v. Golden*, 551 S.W.2d 928, 931 (Mo.App. E.D. 1977); *see also Stephan v. World Wide Sports, Inc.*, 502 S.W.2d 264, 269 (Mo. 1973).

■ Moreover, we find unpersuasive Brown & James's reliance on local rule 4.2 of the Circuit Court of St. Louis City. That rule states that only "original petitions and complaints . . . shall be filed in the office of the Circuit Clerk, 1st Floor, Civil Courts Building," the office where the cashier's window is located. However, Brown & James misapplies rule 4.2, which merely states that *original* petitions and complaints in civil cases shall be filed in the office of the Circuit Clerk, 1st Floor. The rule simply has no applicability to a voluntary dismissal.

■ Further, the Plaintiffs' power to dismiss is here unaffected by the pendency of summary judgment motions. Rule 67.02(a) allows a plaintiff to voluntarily dismiss a lawsuit without order of the court anytime prior to the introduction of evidence at trial. In accordance with Missouri caselaw, while the filing of an affidavit in support of, or in opposition to, a motion for summary judgment, or the use of deposition testimony or other evidence, may constitute the "introduction of evidence," this evidence is not "at the trial." *Senior Citizens Bootheel Services v. Dover*, 811 S.W.2d 35, 39–40 (Mo.App. S.D. 1991). Moreover, the introduction of evidence at a pre-trial hearing also does not affect the right of voluntary dismissal. *Id.*, at 40. To the contrary, even if motions are pending, the circuit court loses jurisdiction to take any further action to rule on those motions as of the date the plaintiff dismisses the lawsuit. *Starling v. Union Pacific R. Co.*, 22 S.W.3d 213, 215 (Mo.App. W.D.2000), *citing Givens v. Warren*, 905 S.W.2d 130, 132 (Mo.App. E.D. 1995). Thus, we find that the trial court

erred in granting summary judgment to Brown & James because Plaintiffs' previous voluntary dismissal of Brown & James stripped the court of jurisdiction to render its later ruling. Accordingly, we reverse and remand for the trial court to vacate its grant of summary judgment to Brown & James.

## The Trial Court's Dismissal of Plaintiffs' Claims Against Leader

Plaintiffs' second allegation on appeal is that the trial court erred in dismissing its claims against Leader for failure to state a cause of action. According to Plaintiffs, their petition adequately pleaded claims against Leader for breach of duty to defend, breach of duty to settle, and breach of fiduciary duty. We disagree, and find Plaintiffs' breach of duty-to-defend and duty-to-settle claims insufficient; we further find that Plaintiffs abandoned their claim as to breach of fiduciary duty.

At the outset, we note that all of Plaintiffs' causes of action exist by virtue of assignment from Claus's trustee in bankruptcy. Although the parties challenge the assignability of such claims, we need not reach this issue. Even assuming the claims' assignability, Plaintiffs fail to state a cause of action.

■ A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo.1993). It assumes that all of plaintiff's averments are true, and liberally grants to plaintiffs all reasonable inferences therefrom. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the

elements of a recognized cause of action, or of a cause that might be adopted in that case. *Nazeri,* 860 S.W.2d at 306. Nevertheless, a pleader may literally plead himself out of court, and when facts constituting a defense appear affirmatively on the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer. *Household Finance Corp. v. Avery,* 476 S.W.2d 165, 168 (Mo.App. S.D.1972); 41 Am.Jur. Pleading, section 212.

With this standard in mind, we turn to Plaintiffs' petition and examine each of the three alleged causes individually. We begin with Plaintiffs' claim for breach of duty to defend.

### Duty to Defend

■■■ "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial." *McCormack Baron Management Serv., Inc. v. American Guarantee and Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo. banc 1999), *quoting* 13 JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE, section 4684 (rev.vol.1976). The duty of a liability insurer to defend pursuant to its agreement is determined by comparing the language of the insurance contract and the allegations set forth in the petition. *Moore v. Commercial Union Ins. Co.,* 754 S.W.2d 16, 18 (Mo.App. E.D.1988). If the petition against an insured alleges facts which state a claim potentially within the policy's coverage, there is a duty to defend. *Luyties Pharmacal Co. v. Frederic Co., Inc.,* 716 S.W.2d 831, 834–835 (Mo.App. E.D.1986).

■■■ According to Plaintiffs' petition, Leader failed or refused to provide a defense despite Freeman's demand that Leader provide a defense in May 1993 and Claus's request that Leader defend against the Tobin lawsuit in September 1995. Plaintiffs' petition, however, further alleges that both demands were not made until well after March 17, 1992, when the trial court in Leader's declaratory judgment suit held that Leader had no further duty to defend Claus. This judgment established that Claus had no further rights to a defense by Leader.

■■■ Plaintiffs claim their right to sue by virtue of an assignment of Claus's causes of action by his trustee in bankruptcy. The legal maxim, *assignatus utitur jure auctoris,* reminds us that an assignee is clothed with the rights of the principal. Thus, an assignee can receive no more than an assignor can give. A party making a claim through a derivative right acquires no greater rights in law or equity than the party for whom it was substituted. *Bonner v. Automobile Club Inter-Insurance Exchange,* 899 S.W.2d 925, 928 (Mo.App. E.D.1995) (Plaintiffs, who were assigned insured's claims for bad faith refusal to settle and defend against insurance company, stand in the shoes of the assignor-insured); *Stoverink v. Morgan,* 660 S.W.2d 743, 745 (Mo.App. E.D.1983) (Subrogee insurance company is bound by declaratory judgment entered against its insured determining accident liability, which insured did not appeal from). Assignees Tobin and Freeman "stand in the shoes" of Claus and can only receive the rights Claus possessed at the time of assignment. Because the declaratory judgment precluded Claus's claim for failure to defend against Leader, it precludes Plaintiffs as well. This is because Plaintiffs would still have to allege and prove that Leader breached its duty to defend Claus. However, the prior declaratory judgment determined that Leader owed no further duty to defend. Plaintiffs, in their peti-

tion, alleged the circumstances of the prior interpleader and declaratory judgment. In doing so, they pleaded Claus and, derivatively, themselves out of court.

■■■ Plaintiffs strongly challenge Leader's use of interpleader[3] and its declaratory judgment suit to discharge its responsibilities. We decline Plaintiffs' invitation to scrutinize the judgments rendered in the interpleader and declaratory judgment actions. "A collateral attack on a judgment is an attempt to impeach the judgment in a proceeding not instituted for the purpose of annulling the judgment." *Major v. Frontenac Industries, Inc.*, 968 S.W.2d 758, 761 (Mo.App. E.D.1998). An unappealed final judgment is conclusive of the matters adjudicated, and cannot be challenged in a separate proceeding. *Id.* Therefore, we do not reach the question of the propriety of either the judgment in interpleader or the declaratory judgment because that could only be determined upon appeal from those judgments. What we do reach, however, is the issue of whether those judgments are binding on the parties or individuals, like Plaintiffs, asserting a claim derivatively. Those judgments are binding and preclude any claim for failure to defend.

### Duty to Settle

■■■ We now turn to Plaintiffs' claim for breach of duty to settle, and again find that the trial court did not err in granting Leader's motion to dismiss.

An insurer's right to control settlement and litigation under a liability insurance policy creates a fiduciary relationship between insurer and insured. *Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d 13, 18 (Mo.App. W.D.1983). Thus, an insurer owes a duty to exercise good faith in evaluating and negotiating third-party claims against its insured, and the insurer may be held liable in tort for a third-party judgment in excess of policy limits if it fails to perform its fiduciary obligation in good faith. *Id.* It is the existence of this fiduciary relationship between insurer and insured, aside from insurer's subsisting implied covenant of good faith and fair dealing under the insurance policy, that exposes an insurer to tort liability for failing to exercise good faith in evaluating and negotiating third-party claims against an insured. *Id.*

■■■ In order to state a claim for breach of duty to settle, Plaintiffs must allege the following elements: (1) the insurer's assumption of control over negotiation and settlement and legal proceedings brought against the insured; (2) a demand by the insured that the insurer settle the claim; (3) the insurer's refusal to settle the claim within the liability limits of the policy, and (4) proof that the insurer acted in bad faith, rather than negligently. *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 564 (Mo.App. S.D.1990).

**3.** Because the insurer must pay damages for which the insured becomes "legally responsible," numerous courts have held that insurers cannot discharge their duty to indemnify by interpleading funds unless such interpleader discharges liability of the insured. *See Emcasco Ins. Co. v. Davis*, 753 F.Supp. 1458 (W.D.Ark.1990); *Utah Power and Light Co. v. Fed. Ins. Co.*, 711 F.Supp. 1544 (D.Utah 1989); *Stanley v. Cobb*, 624 F.Supp. 536 (E.D.Tenn.1986); *Samply v. Integrity Ins. Co.*, 476 So.2d 79 (Ala.1985); *Aetna Ins. Co. v. Borrell–Bigby Elec. Co.*, 541 So.2d 139 (Fla. App.1989); *Anderson v. United States Fidelity and Guar. Co.*, 177 Ga.App. 520, 339 S.E.2d 660 (1986); *Brown v. Lumbermens Mutual Cas. Co.*, 326 N.C. 387, 390 S.E.2d 150 (1990); *Lumbermen's Mut. Cas. Co. v. McCarthy*, 90 N.H. 320, 8 A.2d 750 (1939); *Kocse v. Liberty Mut. Ins. Co.*, 159 N.J.Super. 340, 387 A.2d 1259 (1978); *Aetna Cas. Sur. Co. v. Sullivan*, 33 Mass.App.Ct. 154, 597 N.E.2d 62 (1992). *But see Protective Cas. Ins. Co. v. Cook*, 734 S.W.2d 898 (Mo.App. E.D.1987).

■ Plaintiffs' petition alleges that Claus sought settlements of the Freeman and Tobin suits in 1994 and 1995. But because a declaratory judgment previously entered in 1992 held Leader had no further duty to defend Claus, Leader no longer exercised control over the legal proceedings brought against Claus. Because Claus is thus precluded from proving breach of a duty to settle, Plaintiffs are derivatively precluded. And because all these circumstances appear on the face of the petition, Plaintiffs do not state a claim for breach of the duty to settle.

### Breach of Fiduciary Duty

■ The third and final claim Plaintiffs allege in their petition against Leader is breach of fiduciary duty. Because Plaintiffs fail to develop or cite any cases in the argument portion of their brief as to how the trial court erred with respect to their breach of fiduciary duty claim, a shortcoming they apparently concede in their reply brief, the issue is not preserved for appeal and we deem it abandoned. *Saslow Dental–St. Louis v. William H. Jones, D.D.S.,* 751 S.W.2d 396, 398 (Mo.App. E.D.1988).

We reverse and remand the trial court's grant of summary judgment to Brown & James and affirm the trial court's dismissal of Plaintiffs' petition against Leader.

PAUL J. SIMON, J., and SHERRI B. SULLIVAN, J., concur.