

# SUPREME COURT OF MISSOURI
## en banc

MARK D. VOGL,            )
                                    )
               Appellant,       )
                                    )
v.                                 )      No. SC93157
                                    )
STATE OF MISSOURI,      )
                                    )
              Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY
The Honorable David C. Dally, Judge

*Opinion issued August 19, 2014*

The motion court dismissed Mark Vogl's Rule 24.035 motion for post-conviction relief, without an independent inquiry, after appointed post-conviction counsel filed a motion to rescind appointment of counsel that informed the court that Mr. Vogl's *pro se* motion was stamped "filed" after the last day permitted by the rule. Thereafter, Mr. Vogl filed the motion at issue to reopen his post-conviction proceedings, claiming that his counsel abandoned him by failing to investigate the timeliness of his post-conviction motion before counsel filed a motion to rescind appointment of counsel. The motion court entered judgment overruling Mr. Vogl's motion. Mr. Vogl appeals. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10. Because the record raises the presumption that Mr. Vogl was abandoned by his post-conviction counsel, the motion court clearly erred in dismissing Mr. Vogl's motion. The judgment is reversed, and the cause is remanded.

## Facts and Procedural Background

On June 21, 2007, Mr. Vogl pleaded guilty to two felony counts of first-degree statutory sodomy under section 566.062.[1] He then was sentenced by the circuit court to 15 years imprisonment on each count, with the sentences to run concurrently. After pronouncing the sentence, the circuit court informed Mr. Vogl of his right to seek post-conviction relief under Rule 24.035. On September 18, 2007, Mr. Vogl was delivered to the Missouri Department of Corrections ("DOC") to serve his sentence. He did not appeal his conviction.

Under Rule 24.035, Mr. Vogl had to file a timely Rule 24.035 motion to seek post-conviction relief.[2] In light of his delivery date to the DOC, Mr. Vogl's post-conviction motion had to be filed on or before March 17, 2008.[3] The docket sheet and file stamp on Mr. Vogl's motion reflect that his *pro se* motion was filed in the Joplin office of the Jasper County circuit clerk on March 18, 2008.

---

[1] All statutory references are to RSMo Supp. 2013, unless otherwise specified.

[2] Rule 24.035(b) provides:

> A person seeking relief pursuant to this Rule 24.035 shall file a motion to vacate, set aside or correct the judgment or sentence substantially in the form of Criminal Procedure Form No. 40.
>
>         \*        \*        \*
>
> If no appeal of such judgment was taken, the motion shall be filed within 180 days of the date the person is delivered to the custody of the department of corrections.

[3] In computing the due date, the date that Mr. Vogel was delivered to the DOC is not included in the 180 days. *See* 44.01(a); *Phelps v. State*, 351 S.W.3d 269, 270-71 (Mo. App. 2011). The actual last date for Mr. Vogl's Rule 24.035 motion to be filed would have been Sunday, March 16, 2008. However, Rule 44.01(a) provides that if a period of time ends on a Saturday, Sunday, or legal holiday, the deadline is extended to the end of the next day that is not a Saturday, Sunday, or legal holiday. Therefore, the time period for Mr. Vogl to file his Rule 24.035 motion ended on Monday, March 17, 2008.

Upon the filing of Mr. Vogl's post-conviction motion, the motion court appointed post-conviction counsel to represent Mr. Vogl in the proceeding. Thirteen days later, Stephen J. Harris, the area district defender for the Missouri State Public Defender, filed a motion requesting that the appointment of counsel be rescinded. In his motion, appointed counsel alleged that Mr. Vogl's Rule 24.035 motion was untimely because Mr. Vogl was delivered to the department of corrections on September 18, 2007, and Mr. Vogl's motion was stamped "filed" 182 days later. The certificate of service indicates that the motion to rescind was served only on the prosecuting attorney, and there is nothing in the circuit court record to indicate that Mr. Vogl received service or notification of appointed counsel's filing of the motion to rescind appointment of counsel. Six days later, without a hearing or independent inquiry, the motion court entered an order rescinding its previous order appointing counsel and dismissing the case with prejudice because the court found that "[f]urther review of the file indicates that the motion was not timely filed."

On March 17, 2011, Mr. Vogl filed a motion titled "Motion to Reinstate Post-conviction Action Brought Pursuant To Rule 24.035 On Basis of Timely Filing, And To Vacate Order Rescinded [sic] Appointment of Counsel and Dismissing 24.035 Action." Specifically, the 2011 motion claimed that his *pro se* Rule 24.035 motion was timely filed and, even if filed in the wrong court, should have been considered timely filed and transferred to the proper court rather than dismissed. In addition, Mr. Vogl alleged that he had been abandoned by his appointed counsel. On November 4, 2011, the motion court, without holding an evidentiary hearing, entered an order refusing to take any further action

3

on the basis that Mr. Vogl's post-conviction proceedings previously had been dismissed with prejudice due to untimely filing.[4]

On May 11, 2012, Mr. Vogl filed the *pro se* motion presently at issue requesting that the motion court adjudicate his post-conviction proceedings because he was abandoned by his appointed counsel.[5] In his motion, Mr. Vogl requested that the motion court hold an

---

[4] Judge Wilson, in his dissent, would find that the disposition of Mr. Vogl's March 17, 2011, motion precludes consideration of Mr. Vogl's current motion claiming abandonment by post-conviction counsel. Judge Fischer agrees, using multiple references in his dissent to Mr. Vogl's current motion being the third motion he has filed. The state did not assert in the court of appeals or in this Court that the disposition of Mr. Vogl's March 17, 2011, motion is a procedural bar to the adjudication of his current motion. Nevertheless, the dissents, *sua sponte*, raise this issue that was not briefed or argued relying on Rule 24.035(l)'s prohibition of successive motions. The context of the prohibition in Rule 24.035(l) makes it clear that the rule references only post-conviction motions and not motions raising claims of abandonment by post-conviction counsel because Rule 24.035 does not reference or establish procedures for claims of abandonment. Likewise, this Court's holdings that there cannot be a waiver of the mandatory time limits in Rule 24.035 are referencing the deadlines for the filing of initial motions for post-conviction relief and were not made in the context of motions claiming abandonment by post-conviction counsel. *See Price v. State*, 422 S.W.3d 292, 297 (Mo. banc 2014); *Dorris v. State*, 360 S.W.3d 260, 266-69 (Mo. banc 2012); *Smith v. State*, 887 S.W.2d 601, 602-03 (Mo. banc 1994).

Judge Fischer and Judge Wilson urge in their dissents that this Court deny Mr. Vogl's claim, citing cases that would allow this Court, *sua sponte*, to find that the doctrine of *res judicata* bars review. Because the motion court dismissed Mr. Vogl's current abandonment claim as procedurally barred on the ground that his Rule 24.035 action was dismissed with prejudice for the untimely filing of his original *pro se* motion and Mr. Vogl's claim of abandonment never has been adjudicated on the merits, this Court declines to do so.

[5] Mr. Vogl titled his pleading a "Motion to Reopen Postconviction Proceeding and Request for Hearing." In *Eastburn v. State*, this Court held that the proper terminology for a motion claiming abandonment of post-conviction counsel is a motion for post-conviction relief due to abandonment and not a motion to reopen post-conviction proceedings. 400 S.W.3d 770, 774 (Mo. banc 2013). This case, like *Eastburn*, does not allege active interference in the timely filing of the original motion but, rather, that appointed post-conviction counsel abandoned him by not proceeding as required by Rule 24.035(e). The terminology suggested by *Eastburn* has led to confusion between motions claiming abandonment and

4

evidentiary hearing to determine the merits of his claim of abandonment. For support, Mr. Vogl made the following allegations pertaining to the filing of his *pro se* motion and his appointed counsel's representation:

- The April 16, 2008 motion to rescind appointment of counsel filed by post-conviction counsel was filed without any consultation with Mr. Vogl.

- If post-conviction counsel had consulted with Mr. Vogl, he would have obtained facts that would have proved the timely filing of Mr. Vogl's motion.

- Post-conviction counsel's alleged failure to investigate the circumstances surrounding the filing of Mr. Vogl's Rule 24.035 motion before filing the motion to rescind appointment of counsel constituted abandonment and noncompliance with Rule 24.035 because he filed neither an amended motion for post-conviction relief nor a statement explaining that all facts and claims had been asserted in the *pro se* motion.

- Mr. Vogl never received notification that his counsel intended to file a motion to rescind counsel's appointment. If he had been notified, he would have attempted to contact the court to request a hearing on the motion.

Attached to Mr. Vogl's motion were two exhibits – letters from the Jasper County circuit clerk's office written in response to Mr. Vogl's inquiries regarding the Jasper County circuit clerk's office procedures for receiving and forwarding mail from one clerk's office to the other.

Jasper County maintains two courthouses – one in Carthage, which is the county seat, and the other in Joplin. Mr. Vogl alleges that he mailed his *pro se* Rule 24.035 motion to the Jasper County circuit clerk's office in Carthage on March 12, 2008, and it arrived there on March 17, 2008. On the same day, after recognizing that the file regarding his criminal

---

motions for post-conviction relief, as evidenced by the dissents. To avoid such confusion, Mr. Vogl's motion will be referred to as a motion claiming abandonment by post-conviction counsel.

conviction was at the Joplin office, the Carthage office forwarded the motion to the Joplin office without first stamping the motion as filed. When the Joplin office received Mr. Vogl's *pro se* motion, it then stamped it "filed" for the first time on March 18, 2008.

The first letter attached to Mr. Vogl's motion articulates the clerk's office procedure when forwarding mail to the correct office location. The letter states that the Carthage office received Mr. Vogl's motion, determined that it belonged in the Joplin office, and sent it to the Joplin office a day later. Specifically, the letter states:

1. Mail is received in whichever office the envelope is addressed to (in the above referenced case, Jasper County Clerk – not Jasper County Circuit Clerk – two (2) totally different offices);
2. When mail is opened and determined to belong to a different office in the Courthouse, the mail is taken to the correct office (in this case the correct office was the Jasper County Circuit Clerk's office);
3. Jasper County Circuit Clerk's Office in Carthage determined your original case was handled in the Joplin location and any subsequent filings must also be filed in the Joplin location and placed your documents in a basket for our "runner" to pick up to deliver to Joplin. Our "runner" picks up every afternoon in Carthage and delivers to the Circuit Clerk's Office in Joplin the following morning. He also delivers mail received in Joplin that needs to go to Carthage.

After receiving the first letter, Mr. Vogl wrote a letter, dated June 27, 2010, to the Jasper County circuit clerk asking when his *pro se* post-conviction motion initially was received by the Carthage office, not when the Joplin office received it after the Carthage office forwarded it.[6] The second letter from the clerk's office was written in response to

---

[6] Consistent with Mr. Vogl's allegation regarding the handling of his *pro se* motion, his letter was stamped "filed" in the clerk's Carthage office on July 1, 2010. That file stamp is crossed out. A second file stamp by the circuit clerk's Joplin office is dated July 2, 2010. In addition, the fact that Mr. Vogl's letter was dated June 27, 2010, and stamped as filed for the first time on July 1, 2010, supports his contention that a letter leaves the DOC in

6

Mr. Vogl's June 27, 2010, letter. It states that, if it takes three days for Mr. Vogl's motion to get from Cameron to the Carthage office as Mr. Vogl had said, then it would follow that the Carthage office received his *pro se* motion on March 17, 2008. The deputy circuit clerk further stated that the envelope containing the original *pro se* motion was not in the clerk's file. The actual text of the letter states:

> According to your letter dated March 12, 2008, your Motion was being mailed without copies since your housing unit was locked down and it needed to be mailed immediately. It is my presumption that your Motion went out in the next morning's mail, being Thursday, March 13, 2008. If, as you state, mail takes three (3) days from Cameron to Carthage, that would put it being received on Sunday, March 16, 2008 on which there is no mail delivery subsequently being delivered to our Carthage office on Monday, March 17, 2008 and received in our Joplin office on Tuesday, March 18, 2008.
>
> On Mondays, when we receive an abundant amount of mail, it is our normal procedure for mail to be delivered to another office to stamp one (1) envelope with the date received and then rubber band anything else to that piece of mail.

The motion court overruled Mr. Vogl's motion and request for evidentiary hearing. The court stated that Mr. Vogl's post-conviction action previously had been dismissed with prejudice as untimely. Thereafter, Mr. Vogl timely appealed. The case was transferred to this Court after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

## Standard of Review

When a motion court overrules a motion claiming abandonment by post-conviction counsel, appellate review is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *Gehrke v. State*, 280 S.W.3d 54, 56 (Mo.

Cameron the day after it is dated and takes three days to be delivered from Cameron to the circuit clerk's office in Carthage.

banc 2009).  After reviewing the entire record, a motion court's findings and conclusions are clearly erroneous only if the reviewing court is "left with the definite and firm impression that a mistake has been made."  *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014).[7]

## Analysis

Mr. Vogl claims that the motion court erred in overruling, without an evidentiary hearing, his motion claiming abandonment by post-conviction counsel.  In his motion, Mr. Vogl alleges that post-conviction counsel abandoned him by not investigating to ascertain the facts regarding the timeliness of the filing of his *pro se* post-conviction motion.[8]  Mr. Vogl alleges in his motion that, if post-conviction counsel would have

---

[7] In *Price*, the movant filed a post-conviction motion pursuant to Rule 29.15, which is the post-conviction rule applicable to movants convicted of a felony after trial.  Rule 29.15 contains certain substantive provisions that are identical to provisions in Rule 24.035, applicable to movants who have pleaded guilty.  *See* Rule 29.15.  Accordingly, case law interpreting a provision that is identical in both rules applies equally in proceedings under either rule.  *See Moore v. State*, 934 S.W.2d 289, 290 (Mo. banc 1996).

[8] While Judge Fischer's dissent asserts, *sua sponte*, that any claim of abandonment should be raised during the course of a movant's initial post-conviction proceeding, this Court has held otherwise.  In *State ex rel. Nixon v. Jaynes*, this Court suggested in dicta that a movant, by raising a claim of abandonment, could seek post-conviction relief more than ten years after the motion court had overruled the movant's initial *pro se* post-conviction motion.  63 S.W.3d 210, 217-18 (Mo. banc 2001).  Then, in a 2008 decision, this Court addressed the issue raised by Judge Fischer's dissent in this case and expressly held that "the abandonment doctrine provides a narrow exception permitting the circuit court to re-open an otherwise final post-conviction case." *Taylor v. State,* 254 S.W.3d 856, 858 (Mo. banc 2008).  Since *Taylor,* this Court has continued to address claims of abandonment raised in motions that, like Mr. Vogl's, were made after all opportunities to challenge the motion court's initial denial of post-conviction relief, whether it be via a Rule 75.01 motion, direct appeal, or a motion for leave to file an appeal out of time, had expired. *See Eastburn*, 400 S.W.3 at 774 (motion claiming abandonment by appointed counsel was filed approximately 13 years after the motion court denied initial relief); *Gehrke*, 280 S.W.3d at 57 (motion claiming abandonment by appointed counsel was filed more than seven years after the motion court denied relief); *Crenshaw v. State*, 266 S.W.3d 257, 259 (Mo. banc 2008) (motion claiming

8

contacted him regarding the circumstances of the filing of the *pro se* post-conviction motion rather than relying on the erroneous file stamp, counsel would have learned that the *pro se* motion was, in fact, filed timely. Specifically, he alleges that appointed counsel would have discovered that Mr. Vogl's motion was received timely by the Jasper County circuit clerk but was stamped with an incorrect date by the circuit clerk.

In Jasper County, there is a courthouse in Carthage, the official county seat. Jasper County maintains a second courthouse in Joplin, as authorized by section 71.300, RSMo 2000. The Jasper County circuit clerk has offices in both courthouses. The documents attached to Mr. Vogl's motion state that the circuit clerk has a practice of stamping documents received by the circuit clerk's office as "filed" only when the document is received by the office where the file for the case is physically located. Under the 29th Judicial Circuit's local court rule, Local Rule 4.3, "all circuit court actions shall be filed

---

abandonment by appointed counsel was filed more than two years after the motion court denied relief).

Judge Fischer's dissent concedes that the aforementioned cases from this Court permit the filing of a motion to reopen otherwise final post-conviction proceedings. Nevertheless, his dissent asserts that the decisions in these cases are not precedent for finding that Mr. Vogl's motion is not procedurally barred. In reaching that conclusion, Judge Fischer misinterprets this Court's decision in *Taylor* when he states that *Taylor's* "pronouncement that abandonment of post-conviction counsel serves as a 'narrow exception' to [Rule 75.01] . . . was not necessary to the judgment, and is not a 'holding' of this Court." To the contrary, this Court's holding in *Taylor* was a consideration of whether a motion claiming abandonment filed after a post-conviction judgment is final was procedurally barred, and the Court found that it was not. *Taylor*, 254 S.W.3d at 858. The Court then ruled on the merits of Mr. Taylor's claim of abandonment. *Id*. This discussion by the Court in *Taylor* is not dictum. *State ex rel. Anderson v. Hostetter*, 140 S.W.2d 21, 24 (Mo. 1940) (dicta are "expressions of opinion, not in anywise necessary for the actual decision of any question before the court").

9

with the Circuit Court Clerk of this County in Joplin or Carthage." Because Mr. Vogl's *pro se* motion was an initial pleading commencing an independent civil action, *see Cowans v. State*, 778 S.W.2d 758, 761 (Mo. App. 1989), he was permitted to file it in either Joplin or Carthage per Local Rule 4.3.

Moreover, the offices are one and the same, and documents are filed when they are received by either office. A pleading is deemed filed at the time it is received by the clerk of a circuit court. Rule 43.02(b). *See also Stephan v. World Wide Sports, Inc.*, 502 S.W.2d 264, 269 (Mo. 1973).[9] Accordingly, upon receipt of a pleading, the Jasper County circuit clerk immediately should stamp the pleading as filed, regardless of whether the clerk believes it would go into a file at the clerk's office in the other Jasper County courthouse. If the clerk did not do so and, instead, forwarded the pleading to a different office location without a file stamp, the Jasper County circuit court would have been operating under procedures that are contrary to Rule 43.02(b).[10] Therefore, if Mr. Vogl can prove that his *pro se* motion arrived at *either* office of the circuit clerk of Jasper County on or before March 17, 2008, the motion was filed timely.

In this appeal, Mr. Vogl claims that counsel's failure to ascertain the true date of filing and subsequent failure to file an amended motion alleging facts to prove the timeliness

---

[9] *Stephan* cites to former Rule 43.01(j), the subject matter of which now is articulated in Rule 43.02. 502 S.W.2d at 269. Rule 43.02(b) provides that "the filing of pleadings and other papers with the court as required by Rules 41 through 101 shall be made by filing them with the clerk of the court[.]"

[10] On November 18, 2013, Japser County implemented an electronic filing system, which likely has eliminated the practice of forwarding court filings to another office location in most cases. Electronic filing is not available to *pro se* litigants, however, so it will not eliminate the practice in post-conviction cases.

10

of his *pro se* motion constitutes abandonment. He maintains that he is entitled to an evidentiary hearing on his motion claiming abandonment by post-conviction counsel so he can have the opportunity to offer proof of the facts alleged in his motion. Ultimately, Mr. Vogl seeks to have his Rule 24.035 claims adjudicated on their merits.[11]

Rule 24.035 provides the exclusive procedure by which a person convicted of a felony on a guilty plea may seek post-conviction relief. Rule 24.035(a). As a threshold to achieving post-conviction relief, the movant first must file a timely Rule 24.035 motion. Rule 24.035(b). *See also Price,* 422 S.W.3d at 296. When a *pro se* motion is filed by an indigent movant, the court shall cause counsel to be appointed to represent the movant. Rule 24.035(e). Thereafter, appointed counsel must file either an amended motion to compensate for any deficiencies in the *pro se* motion or, in the alternative, a statement explaining the actions counsel took to ensure that no amended motion is needed. Rule 24.035(e).

In a motion filed pursuant to Rule 24.035, the movant "must allege facts showing a basis for relief to entitle the movant to an evidentiary hearing. The movant also must allege facts establishing the motion is timely filed." *Dorris v. State,* 360 S.W.3d 260, 267 (Mo. banc 2012). In addition to making said factual allegations, the movant also must *prove* those allegations. *Id.* The burden of alleging and proving that the motion is timely filed can be met by the movant in one of three ways: (1) by filing the original *pro se* motion timely so

---

[11] If the motion court determines, after an inquiry, that Mr. Vogl was abandoned, the appropriate remedy is the appointment of new counsel with the allowance of time for that counsel to proceed anew as required by Rule 24.035(e). *Price*, 422 S.W.3d at 298; *Luleff v. State*, 807 S.W.2d 495, 498 (Mo. banc 1991).

that the file stamp on the motion reflects that it is filed within the time limits proscribed in the rule; (2) alleging in the original *pro se* motion and proving by a preponderance of the evidence that the movant's circumstances fall within a recognized exception to the time limits; or (3) alleging in the amended motion and proving by a preponderance of the evidence that the circuit court misfiled the motion.[12]  *Id.*  If the timely filing of an original post-conviction motion is not proven, the motion court will regard the untimely motion as a "complete waiver" of any right to proceed under Rule 24.035.  Rule 24.035(b); *Price*, 522 S.W.3d at 296.

The first two methods to prove timely filing were not available to Mr. Vogl as the date of filing reflected on his original *pro se* motion is a date past the filing deadline and, at the time he drafted his *pro se* post-conviction motion, he could not have been aware of that fact.  Therefore, Mr. Vogl was left with only the last method of proving timeliness – filing an amended motion alleging facts and then proving that the court misfiled his original *pro se* motion.[13]  *Id.*  Because appointed counsel did not file an amended motion, Mr. Vogl was deprived of the opportunity to employ this method of proof.

Unlike an original motion, which the movant is responsible for pleading and filing, an amended motion is a final pleading, which requires legal expertise.  *Gehrke*, 280 S.W.3d

---

[12] It is possible that a movant would not be aware that movant's circumstances fall within a recognized exception to the filing time limits of the post-conviction rules at the time that the *pro se* motion was filed.  Accordingly, a movant is given the opportunity to raise those allegations in an amended motion.
[13] When a *pro se* post-conviction motion is received by a circuit clerk's office before the end of the filing period set by rule but appears to be untimely due to clerk error, the motion is, in fact, filed timely.  *See Graves v. State,* 372 S.W.3d 546, 549 (Mo. App. 2012); *Phelps v. State*, 21 S.W.3d 832, 833 (Mo. App. 1999).

at 57. Therefore, even though the burden of proving that the original *pro se* motion was filed timely continues to rest with the movant, alleging said timeliness *through an amended motion* requires the movant to depend on post-conviction counsel. This dependency is recognized in Rule 24.035, which articulates the duties owed by appointed counsel to a movant. Rule 24.035 reads:

> Counsel *shall ascertain* whether sufficient facts supporting the claims are asserted in the motion and whether the movant has included all claims known to the movant as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all claims known to the movant, *counsel shall file an amended motion* that sufficiently alleges the additional facts and claims. If counsel determines that no amended motion shall be filed, *counsel shall file a statement* setting out facts demonstrating what actions were taken to ensure that (1) all facts supporting the claims are asserted in the pro se motion and (2) all claims known to the movant are alleged in the pro se motion.

Rule 24.035(e) (emphasis added).

As stated by Rule 24.035(e), appointed counsel is charged with the duty to "ascertain" whether the *pro se* motion asserts sufficient facts to support the movant's claims for relief and ensure that the movant has included all claims "as a basis for attacking the judgment and sentence." *Id.* Inherent in the "sufficient facts to support the movant's claims for relief" are facts that would prove the timely filing of the original *pro se* motion because a movant is prohibited from proceeding in a post-conviction action if the original motion was filed untimely. Rule 24.035(b); *Dorris*, 360 S.W.3d at 267.

Mr. Vogl asserts that appointed counsel's failure to ascertain that there were facts that would prove the timeliness of his *pro se* motion and to file an amended motion alleging those facts constitutes abandonment sufficient to allow him a remedy. In *Price,* this Court recently clarified what circumstances will constitute abandonment by post-conviction

13

counsel. 422 S.W.3d at 298-307. Reaffirming *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), and *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991), *Price* held that "a client is not bound by the actions or inactions of his counsel [when] . . . the client is an indigent inmate who initiates a timely post-conviction proceeding and his court-appointed counsel's failure to fulfill the duties imposed by Rule [24.035] is not merely incompetent but tantamount to the motion court having failed to appoint counsel at all." 422 S.W.3d at 303. A movant is abandoned when appointed counsel fails to comply with the requirements in Rule 24.035(e) by not filing either an amended motion or a statement setting out facts that demonstrate the actions that were taken to ensure that an amended motion is not needed. *Id.*

This Court has outlined when a motion court is required to conduct an independent inquiry of a claim of abandonment of a post-conviction movant by appointed counsel. *See McDaris v. State*, 843 S.W.2d 369, 371 (Mo. banc 1992);[14] *Moore v. State*, 934 S.W.2d 289 (Mo. banc 1996). In *McDaris¸* appointed counsel filed an amended Rule 24.035 motion two days late. 843 S.W.2d 369 at 371. The state filed a motion to dismiss both the *pro se* and amended motions for post-conviction relief. *Id.* Regarding the state's allegation that the amended motion was filed after the deadline, there was an in-court inquiry by the motion court of appointed counsel regarding the reason for the late filing of the amended motion. *Id.* Counsel advised the motion court that counsel had difficulty getting the amended

---

[14] There has been confusion as to whether *McDaris* was overruled by *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997). While the appendix in *Carson* listing the cases it overrules includes *McDaris*, the reference to *McDaris* was only for the purpose of indicating that *State v. Lucas*, 809 S.W.2d 54 (Mo. App 1992), which was being overruled by *Carson*, previously was overruled by *McDaris* on other grounds. Therefore, the decision in *McDaris* is still good law and of precedential authority.

14

motion "back from the penitentiary and filing it," but claimed to have filed it as soon as receiving it in the mail from Mr. McDaris. *Id*. The motion court dismissed the amended motion and overruled Mr. McDaris's *pro se* motion without further inquiry. *Id*.

Mr. McDaris appealed the motion court's judgment, alleging "that motion counsel abandoned him by failing to file the amended motion on time, or at least that the trial court did not adequately investigate abandonment." *Id*. This Court ruled that the motion court's inquiry was insufficient. *Id*. at n.1. The Court held:

> [T]he trial court should, as part of its independent inquiry under *Luleff*, inquire not only of postconviction counsel, but ensure that movant is informed of counsel's response and given an opportunity to reply. The method of making this inquiry may be as formal or informal as the motion court deems necessary to resolve the question of abandonment by counsel, including, but not limited to, a written response and opportunity to reply, a telephone conference call, or a hearing. However, a sufficient record must be made to demonstrate on appeal that the motion court's determination on the abandonment issue is not clearly erroneous.

*Id*.

Two post-conviction movants, Dale E. Moore and Jacob Carr, cited this rule from *McDaris* as support for their assertions that there was not sufficient inquiry by the motion courts of their claims that they were abandoned by appointed counsel despite counsel filing timely statements that counsel had decided to rely on each movant's *pro se* motion. *Moore*, 934 S.W.2d at 290. The Court stated, "*McDaris* does not require a response from movants when postconviction counsel files a timely statement setting out sufficient reasons for counsel's decision to rely on the *pro se* motion." *Id*. The Court stated that, "where the record shows on its face that post-conviction counsel did not abandon movant, there is no need to proceed to such an inquiry." *Id*. at 292.

The Court then reviewed the movants' individual claims that they were abandoned by their appointed counsel, who each filed a statement that counsel had decided to rely on movant's *pro se* motion rather than file an amended motion. *Id*. at 290. The Court reviewed the content of the appointed counsels' statements. *Id*. at 290-91. The Court found that Mr. Moore was not abandoned because his appointed counsel's timely affidavit "declared complete familiarity with the record and announced a reasoned decision that counsel would not file an amended motion" and "[t]here [was] simply nothing in the record to support a claim that postconviction counsel abandoned Moore." *Id* . at 292.[15]

In contrast, the Court found that the record in Mr. Carr's case raised the presumption that he was abandoned by his appointed counsel. *Id.* Citing the requirement in Rule 24.035(e) that counsel is required to "ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence[,]" the Court found the statement filed by Mr. Carr's counsel "shows *on its face* that counsel took neither of the two actions required by Rule 24.035(e)." *Id.* The Court found that counsel's statement that he had reviewed Mr. Carr's file "with the *exclusion* of the transcripts of the guilty plea hearing . . . , the sentencing hearing . . . , and movant's pro se motion" was "tantamount to a confession of abandonment." *Id.* at 290, 292 (internal quotation marks omitted). The Court found that

---

[15] The affidavit filed by Mr. Moore's appointed counsel indicated that counsel "had reviewed the record, had inquired of movant regarding the existence of additional claims or facts relating to the post-conviction motion, had explained to movant his rights under Rule 24.035 and determined that Moore's *pro se* motion 'includes all colorable post-conviction claims known to movant or counsel.'" *Id.* at 290.

a *McDaris* hearing was required because "the face of the record raises the presumption of abandonment to which *Luleff* and *Sanders* refer." *Id.* at 292.

Accordingly, when the record raises a presumption of abandonment because appointed counsel has failed to comply with the requirements in Rule 24.035(e) that counsel file a timely amended motion or a statement setting out facts that demonstrate counsel's actions to ensure no amended motion is needed, a motion court must conduct a sufficient independent inquiry of a post-conviction movant's claim of abandonment. *Moore*, 934 S.W.2d 289, 291-92; *McDaris*, 843 S.W2d at 371 n.1. When the record refutes the claim of abandonment, however, no independent inquiry is required of the motion court. *Id.*

Here, Mr. Vogl's appointed counsel failed to comply with Rule 24.035(e) because he did not file either an amended motion or a statement setting out facts demonstrating that counsel took actions to ensure why no amended motion was needed. Instead, appointed counsel filed a motion to rescind appointment of counsel.[16] Importantly, appointed counsel's characterization of his request to terminate his representation of Mr. Vogl as a "motion to rescind appointment of counsel" rather than a "motion to withdraw" does not relieve counsel of his duty to provide Mr. Vogl with the representation required under Rule

---

[16] Mr. Vogl alleges – and the certificate of service and docket sheet reflect – that he never was notified that counsel filed the motion to rescind appointment of counsel. When counsel terminates representation of a client, counsel has a duty to protect the client's interest; "[o]ne step necessary to protect a client's interest is giving notice to the client" of the attorney's intention to terminate representation. *In re Coleman*, 295 S.W.3d 857, 866 (Mo. banc 2009).

24.035. No matter the nomenclature, counsel had responsibilities under Rule 24.035(e) that arose upon counsel's appointment that counsel failed to fulfill.[17]

The record in this case raises a presumption of abandonment by appointed counsel because it reflects that counsel did not comply with the requirements in Rule 24.035(e) by filing either an amended motion or a statement setting out facts demonstrating the actions taken by counsel ensured that no amended motion was necessary. Therefore, the motion court was required to conduct an independent inquiry of Mr. Vogl's claim of abandonment. It did not do so. Accordingly, the motion court clearly erred in overruling Mr. Vogl's motion claiming abandonment by post-conviction counsel.

### Conclusion

In post-conviction proceedings, an essential element of a movant's claim in attacking the movant's conviction and sentence is that the movant's original *pro se* post-conviction motion was timely filed. If a timely filed motion appears to be filed untimely due to misfiling by the circuit court, a *pro se* movant may allege facts that prove the misfiling and the timeliness of the original motion in an amended motion filed by appointed post-conviction counsel. When the record shows that appointed counsel did not file either an amended motion or a statement setting out facts demonstrating what actions counsel took to ensure that no amended motion was needed, there is a presumption of abandonment by

---

[17] The court of appeals has held that no abandonment occurs when appointed counsel notifies the motion court that a movant's *pro se* motion was untimely without filing either an amended motion or a statement explaining why no amended motion is needed. *Stewart v. State*, 261 S.W.3d 678, 679 (Mo. App. 2008); *Morgan v. State*; 8 S.W.3d 151, 154 (Mo. App. 1999). This Court disagrees. To the extent *Stewart* and *Morgan* incorrectly held such inaction by appointed counsel does not constitute abandonment, the cases are overruled.

appointed counsel. Because the record in Mr. Vogl's case shows that no amended motion or statement was filed by appointed counsel, it raises the presumption of abandonment, and the motion court erred in not conducting an independent inquiry. The judgment is reversed, and the cause is remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE

Russell, C.J., Stith, Draper, and Teitelman, JJ., concur; Fischer, J., dissents in separate opinion filed; Wilson, J., dissents in separate opinion filed. Fischer, J., concurs in opinion of Wilson, J.

19



# SUPREME COURT OF MISSOURI
## en banc

MARK D. VOGL,                          )
                                       )
        Appellant,              )
                                       )
   v.                               )      No. SC93157
                                       )
STATE OF MISSOURI,                     )
                                       )
        Respondent.             )

## DISSENTING OPINION

I dissent from the principal opinion.  In my view, the procedural posture of this case bars Vogl's requested relief.  Vogl filed his original Rule 24.035 motion in March 2008.  After sustaining his post-conviction counsel's motion to rescind appointment, the motion court dismissed Vogl's Rule 24.035 motion in April 2008.  Vogl did not appeal the motion court's dismissal.  Rather, nearly three years later, Vogl filed a motion to reinstate his post-conviction proceedings, alleging that he had been abandoned by post-conviction counsel.  That motion was overruled, and the appeal of his claim of abandonment was dismissed.  A year later, and a full four years after his initial motion was dismissed, Vogl filed his third Rule 24.035 motion, alleging for the second time that his appointed post-conviction counsel had abandoned him.  In my view, this third motion is a successive post-conviction motion filed in violation of Rule 24.035(l) and Rule 75.01

and is barred by *res judicata*. Had Vogl wished to assert his claim that he was abandoned or his claim that his original motion was timely filed, Vogl either should have filed a motion to vacate the motion court's judgment within that court's 30-day post-judgment control provided under Rule 75.01 or appealed the dismissal to the court of appeals. Vogl also could have filed a motion for leave to file a late notice of appeal within 12 months after the judgment became final pursuant to Rule 30.03. Vogl's failure to pursue his abandonment claim on direct appeal of the dismissal precludes relief at this time. Further, the fact that Vogl has previously sought relief claiming abandonment, which was denied at the circuit court and appellate court levels, should result in the dismissal of this case based on *res judicata*.[1]

## Facts and Procedural History

In 2007, Vogl pleaded guilty to two counts of statutory sodomy in the first degree, a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years. Section 566.062, RSMo Supp. 2013. The circuit court sentenced Vogl to two concurrent terms of 15 years' imprisonment. Vogl does not allege that he is actually innocent of the crimes to which he pleaded guilty. Furthermore, Vogl does not allege that his guilty plea was not knowingly, voluntarily, and intelligently entered. Yet, the principal opinion approves the use of a procedure in direct conflict with the express terms of this Court's rules and creates new law—once again muddying the abandonment waters. It does so in order for Vogl, who does not now claim innocence or

---

[1] The motion court in this case specifically stated as a basis for dismissal of his second abandonment claim that it had previously dismissed the original claim of abandonment.

2

challenge the validity of his guilty plea, to have a hearing on the merits of whether he was abandoned, despite his failure to raise this claim in the normal course of the procedures previously permitted by this Court. Especially troubling is that this is Vogl's *second* "motion to reopen" his post-conviction proceeding, and nothing in the principal opinion would prohibit him from filing yet another motion.

**Abandonment Claims Should Be Pursued on Direct Appeal According to *McDaris***

It is my view that Vogl was required to raise any abandonment claim in the initial motion court or in a direct appeal of the dismissal of his initial post-conviction motion. The principal opinion's decision to grant Vogl relief on his "motion to reopen" post-conviction proceedings, filed several years after his initial motion was overruled, is in direct conflict with this Court's rules. Rule 24.035(l) specifically provides, "The circuit court shall not entertain successive motions." And Rule 75.01 specifically provides that the circuit court loses control over any judgment 30 days after entry. Remanding Vogl's case for a merits hearing on Vogl's allegations of abandonment permits a successive motion in violation of the clear and express terms of these rules.

As stated above, this is the third Rule 24.035 motion that Vogl has filed (and the second motion claiming he was abandoned by post-conviction counsel). He filed his initial motion in March 2008, which the circuit court dismissed as untimely filed. Three years later, in March 2011, Vogl filed a "Motion to Reinstate Post-Conviction Action … on Basis of Timely Filing," claiming he was abandoned by post-conviction counsel. The motion court dismissed that motion, stating, "This Court has previously dismissed this action with prejudice for failure to file Motion within the time allowed by the rules. This

3

Court will take no further action on this file." Vogl appealed the motion court's action, and in May 2012, the court of appeals dismissed the appeal because Vogl failed to file the record on appeal. Vogl did not seek transfer to this Court. The principal opinion fails to explain why the failure to proceed with the appeal of that motion does not preclude the relief Vogl seeks here.

The subject of this appeal is Vogl's third Rule 24.035 motion (his second motion claiming abandonment), titled "Motion to Reopen Post Conviction Proceeding" and filed in May 2012. The circuit court overruled the motion, stating, "As in my entry of November 4, 2011 the Court notes that this action was previously dismissed with prejudice for failure to file Motion within the time allowed by the rules. Motion to reopen is overruled." This case, therefore, represents Vogl's third bite at the post-conviction apple.[2]

This Court's rules, as written, outline the appropriate procedures for bringing and reviewing post-conviction motions. These same rules are designed to prevent unrestrained relitigation of claims that were, or should have been, brought in earlier proceedings. Specifically, three rules work in concert to achieve these goals.

---

[2] Honoring Rule 24.035(l)'s prohibition against successive motions is particularly important because the only ineffective assistance of counsel claims that may be brought in a Rule 24.035 motion for post-conviction relief after a guilty plea must allege that, due to counsel's ineffectiveness, the movant's guilty plea was not entered knowingly, voluntarily, and intelligently. *Stanley v. State*, 420 S.W.3d 532, 544 (Mo. banc 2014). In this case, Vogl's third motion merely alleged that he was abandoned by counsel, and his initial motion merely alleged that the sentencing judge "did not look at" a number of character reference letters and a letter from a doctor stating that Vogl should stay in therapy rather than go to prison. These allegations do not state a claim for relief under Rule 24.035.

4

First, Rule 75.01 gives a circuit court control over a judgment for 30 days after the judgment is entered. That rule states, "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." During this period, a post-conviction movant can move the court to reopen his or her case or vacate the judgment on any number of grounds, including that the *pro se* motion had been timely filed or that post-conviction counsel failed to file an amended motion or a statement why no amended motion was required. After the expiration of this 30-day period, however, the circuit court loses control over the judgment and loses the authority to vacate or reconsider the proceeding. While this rule specifically grants the circuit court control over the judgment, it also affirmatively cuts off that control after 30 days, prohibiting the circuit court from taking any further action on the matter.

Second, a post-conviction movant is also entitled to an appeal of the circuit court's judgment pursuant to Rule 24.035(k). Subsection k permits the appellate courts to review the motion court's ruling and to determine whether the findings and conclusions of the trial court were clearly erroneous. If a post-conviction movant believes that the circuit court erroneously dismissed his or her Rule 24.035 motion as untimely, then the movant is entitled to appeal that determination to the court of appeals. The movant may argue there that the circuit court erroneously dismissed the initial motion as untimely filed, that counsel abandoned him, or that the motion court failed to make an abandonment determination.

5

Lastly, Rule 24.035(l) prohibits the filing of a successive Rule 24.035 motion. Under the express terms of this rule, a post-conviction movant is required to bring any post-conviction claims in one motion. Any successively filed motions, including those masquerading as "motions to reopen" or "motions claiming abandonment" are specifically prohibited by the express terms of this rule.

Abandonment, as originally conceived, was designed to fit within the framework of Rule 24.035(l), which granted an adequate opportunity for review, while also limiting the number of motions that could be filed and the time frame for review of an abandonment claim. When this Court created the abandonment doctrine, it also discussed the appropriate forum for the evaluation of such claims. As this Court discussed at length in *Price v. State,* 422 S.W.3d 292 (Mo. banc 2014), the abandonment doctrine in post-conviction proceedings was introduced in *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), and *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991). *Luleff* held that counsel's complete failure to file an amended motion or a statement why no such amended motion is necessary amounts to abandonment by post-conviction counsel. *Luleff* also addressed the question of the appropriate forum for addressing abandonment claims. 807 S.W.2d at 497. *Luleff* determined that the initial motion court where the initial motion was being prosecuted is the correct place to address such claims, stating:

> If presented with an opportunity to address claims regarding postconviction counsel, the motion court could appoint new counsel, if necessary, at that time. Should the motion court conclude there is no basis for the movant's claim, a finding to that effect would alleviate the need for appellate courts to speculate as to what occurred in the circuit court. This Court holds that the appropriate forum for addressing claims regarding a complete absence of performance by postconviction counsel on a motion for postconviction

6

relief is in the circuit court where the motion is being prosecuted by the movant.

*Id.* Furthermore, this Court held that the motion court, during the initial post-conviction proceeding, has an obligation to determine whether the movant was abandoned by counsel prior to dismissing the initial post-conviction motion. *Luleff* stated:

> At such time as the motion court may proceed to rule a postconviction motion and there is no record of any activity by counsel on movant's behalf, the motion court shall make inquiry, *sua sponte*, regarding the performances of both movant and counsel. … If the court determines … that counsel has failed to act on behalf of the movant, the court shall appoint new counsel, allowing time to amend the *pro se* motion, if necessary, as permitted under [the post-conviction rules].

*Id.* at 498 (footnote omitted).

Similarly, in *Sanders*, this Court determined that the initial motion court is the appropriate forum for addressing claims that a movant was abandoned due to counsel's failure to timely file an amended motion. 807 S.W.2d at 495. There, the Court stated:

> For the reasons enunciated in *Luleff* … it is expedient to address in the motion court claims regarding failure of postconviction counsel to comply with the time requirements of [the post-conviction rules]. To conduct an inquiry into counsel's apparent failure in this regard does not run afoul of [the post-conviction rules' prohibition against the filing of successive motions]. The appropriate forum for addressing claims regarding failure of postconviction counsel to comply with the requirements of [the post-conviction rules] is in the circuit court where the motion is being prosecuted by movant.

*Id.*

In *McDaris v. State*, this Court outlined the procedure that the initial motion court is to follow when conducting the independent inquiry into whether a movant was abandoned by post-conviction counsel that *Luleff* and *Sanders* required. *McDaris* stated:

7

**Pending issuance of a Rule change, the trial court should, as part of its independent inquiry under *Luleff,* inquire not only of postconviction counsel, but ensure that movant is informed of counsel's response and given an opportunity to reply.** The method of making this inquiry may be as formal or informal as the motion court deems necessary to resolve the question of abandonment by counsel, including, but not limited to, a written response and opportunity to reply, a telephone conference call, or a hearing. However, a sufficient record must be made to demonstrate on appeal that the motion court's determination on the abandonment issue is not clearly erroneous.

843 S.W.2d 369, 371 n.1 (Mo. banc 1992) (emphasis added). This Court has the authority to make a rule change, but it has not changed the procedure set out in *McDaris*.

Following these rules and precedents, there is little doubt that the appropriate forum for addressing Vogl's abandonment claims was in the initial circuit court where the initial motion was filed. And there is little doubt that, under these precedents, the initial motion court should have made inquiry into whether Vogl was abandoned by counsel. If Vogl believed that the initial circuit court erroneously dismissed his motion, he was left with several options. He could have filed a motion to vacate the judgment within 30 days while the circuit court still had control over the judgment, or he could have appealed. Notably, and significant to the resolution of this case, *Luleff* and *Sanders* both involved direct appeals from initial motions in which this Court granted relief.

Despite this precedent and the language of this Court's rules, the principal opinion permits, for the first time, a hearing on the merits of Vogl's abandonment claim raised in what is his third motion. I acknowledge that this Court has made several statements that purport to permit the filing of such a "motion to reopen" and that these cases characterize abandonment as an "exception" to Rule 75.01. However, in my view, these cases are not

8

binding on any court because they rely entirely on dicta and have never been necessary to resolve the issues presented. Moreover, these cases conflict with the rules and have led to an unending cycle of relitigation of "abandonment" claims, with some filings, as the principal opinion acknowledges, coming more than a decade after the initial motion was filed.[3]

As noted, the concept of the "motion to reopen" post-conviction proceedings first appeared in dicta. The first time this Court mentioned the possibility of a "motion to reopen" was in *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 217-18 (Mo. banc 2001). In *Jaynes*, an inmate petitioned the circuit court for a writ of habeas corpus, arguing that his appointed post-conviction counsel had a conflict of interest because post-conviction counsel had also served as trial counsel. *Id.* at 213. This Court held that the inmate had not pleaded sufficient facts to show that he was entitled to habeas corpus relief. *Id.* At the end of the opinion, in dicta, the Court stated that, if the inmate could prove that he had been abandoned, he "may wish to move to reopen his original motion under Rule 29.15 in the sentencing court, provided that his original motion was timely filed." *Id.* at 218. This statement cites no authority for such a motion and does not indicate that the Court considered the time limitations on such motions contained in this Court's rules.

---

[3] The court of appeals recently handed down a case that demonstrates this danger. In *Middleton v. State,* No. WD75669 (Mo. App. Mar. 4, 2014), an inmate filed a "motion to reopen" his post-conviction proceedings due to abandonment, which the circuit court overruled. He appealed, and the court of appeals affirmed in a published opinion. *Middleton v. State*, 200 S.W.3d 140 (Mo. App. 2006). Several years later, the inmate filed a *second* "motion to reopen," again claiming abandonment, which the circuit court again overruled. The inmate appealed, and the court of appeals again affirmed, but only after oral argument and a *second* written opinion.

Later, in *Taylor v. State*, 254 S.W.3d 856, 857-58 (Mo. banc 2008), this Court stated that the "abandonment doctrine provides a narrow exception permitting the circuit court to re-open an otherwise final post-conviction case." The Court cited the *Jaynes* dicta as its only authority for this proposition. *Id.* at 858. The Court did not engage in any analysis regarding Rule 24.035(l)'s prohibition against successive motions. Nor did it examine why "abandonment" should be treated as an exception to any of this Court's rules when the requested remedy could be obtained through direct appeal. Moreover, the Court went on to find that *Taylor* had not been abandoned by his post-conviction counsel. *Id.* at 858. The Court's pronouncement that abandonment of post-conviction counsel serves as a "narrow exception" to the rule, therefore, was not necessary to the judgment and is not a "holding" of this Court.

In *Crenshaw v. State*, 266 S.W.3d 257, 259 (Mo. banc 2008), decided shortly after *Taylor*, this Court likewise stated, "Under this Court's precedents, the motion court has authority to consider a motion to reopen [post-conviction] proceedings when it is alleged that a movant has been abandoned by his counsel." *Crenshaw* cited a court of appeals opinion, *Edgington v. State*, 189 S.W.3d 703 (Mo. App. 2006), to support that proposition. *Edginton*, in turn, cited the *Jaynes* dicta as authority. 189 S.W.3d at 706. The Court in *Crenshaw* did not engage in any analysis regarding what gives the motion court such authority. Moreover, *Crenshaw* did not grant the movant relief. 266 S.W.3d at 260-61. In fact, the Court in *Crenshaw* declined to examine whether abandonment had occurred. *Id.* at 260.

10

In *Gehrke v. State*, 280 S.W.3d 54, 57 n.3 (Mo. banc 2009), the Court again, this time in a footnote, stated that the circuit court has the authority to consider a motion to reopen post-convictions proceedings when the movant alleges abandonment. *Gerhke* cites *Crenshaw*, which, as noted, relies on a court of appeals opinion that cites *Jaynes*. Much like the other cases, *Gehrke* contains no analysis concerning the "exception" and holds that post-conviction counsel did not abandon the movant. *Id.* at 58-59.

No case that the principal opinion or Vogl cites as authority to support the abandonment "exception" to the general rules concerning final judgments actually granted relief to the movant. And never has this Court analyzed the source of such "exception" or how that "exception" squares with Rule 24.035(l)'s prohibition against successive motions.[4]

The rules of this Court do not provide for a "motion to reopen." Nor do they provide for a motion for post-conviction relief due to abandonment. Abandonment, as

_____

[4] Significantly, no case from this Court decided before the errant *Jaynes* dicta addressed abandonment as part of a "motion to reopen" a post-conviction proceeding. Each pre-*Jaynes* case addresses abandonment during the initial post-conviction proceeding or an appeal of the post-conviction motion's overruling without the notion of a "motion to reopen the proceeding." *See Moore v. State*, 934 S.W.2d 289 (Mo. banc 1996) (dealing with two cases in which abandonment was addressed at the motion court level prior to denying relief); *State v. White*, 873 S.W.2d 590, 596-99 (Mo. banc 1994) (reviewing the motion court's determination during the Rule 29.15 proceeding that the movant was not abandoned), superseded on other grounds by rule as stated in *Glover v. State*, 225 S.W.3d 425 (Mo. banc 2007); *McDaris v. State*, 843 S.W.2d 369, 371 (Mo. banc 1992) (reviewing a determination by the motion court that movant was not abandoned).

These cases indicate that, before the *Jaynes* dicta, this Court understood the abandonment doctrine to apply only during the original post-conviction proceeding. No "motion to reopen" based on abandonment seems to have existed. This is particularly evident in *Luleff*, *Sanders*, and *McDaris*, each of which specifically stated that it was the *initial* motion court's responsibility to conduct an independent inquiry into whether abandonment occurred before ruling on the motion in the event of a late or non-filing of the amended motion or statement that no amended motion is necessary.

judicially created, was to be examined prior to the circuit court's decision on the post-conviction motion. The movant was free to argue that certain actions of counsel constituted abandonment during post-conviction proceedings or the direct appeal thereof. In my view, the cases relying on the *Jaynes* dicta are incorrectly decided in so far as they have suggested the use of a motion to reopen post-conviction proceedings, or any motion given another name alleging abandonment by appointed post-conviction counsel, without determining whether such a motion was a prohibited successive post-conviction motion.[5]

The principal opinion states that the Rule 24.035(l) prohibition against successive motions does not apply to abandonment claims because Rule 24.035 does not establish the procedure for abandonment claims. I could accept that position if the principal opinion was willing to follow this Court's holding in *McDaris* which, pending a rule change, required abandonment claims to be made during the appeal of the post-conviction motion. *McDaris* at 371-2. As stated previously, this Court has not adopted a rule providing for an alternative procedure to pursue abandonment claims.

The truly myopic aspect of the "motion to reopen" due to abandonment of post-conviction counsel is its complete disregard of the importance of finality of judgments. As mentioned, permitting these "motions to reopen" as some kind of exception to both Rule 75.01 and Rule 24.035(l) permits an endless cycle of relitigation of the same issue. This is exactly what these rules are designed to prevent. If "abandonment" somehow

---

[5] It should be noted that untimely post-conviction motions due to what *Price* termed "third-party interference" or "active interference" do not run afoul of the prohibition against filing a successive motion. In those cases, no initial motion will have been filed; therefore, the movant needs to file a motion seeking to file the initial post-conviction motion out of time. *See Price*, 422 S.W.3d at 295 n.1, 301-06.

serves as an unlimited and unqualified exception to these rules, there is little to stop Vogl from filing another "motion to reopen" if he is ultimately unsuccessful on remand. If this Court does not follow its rules as written, there is no limit on the number of times a movant may allege abandonment in a "motion to reopen," and there is no limit on the timing of such a motion.

Additionally, the puzzling part about the principal opinion's decision to permit abandonment claims in a "motion to reopen" is that such a motion is completely unnecessary. Any colorable abandonment claim will be available to the movant in the initial motion court or on direct appeal because any successful claim of abandonment will be apparent from the record.[6] As noted, *Price* made clear that abandonment only occurs in two situations: 1) when appointed post-conviction counsel fails to file an amended motion or a statement why no motion is necessary or 2) when such a motion is necessary but is untimely filed by appointed counsel. 422 S.W.3d at 297-98. Either of these situations will be apparent from the face of the record in the *initial* motion court or on direct appeal of the initial post-conviction motion.

This is even true in Vogl's case. The principal opinion ultimately holds that post-conviction counsel abandoned Vogl by failing to file an amended motion or statement in lieu thereof. There is absolutely no reason that Vogl could not have asserted this claim by following the normal procedures permitted by this Court's rules. Vogl could have filed a timely motion to vacate under Rule 75.01 or he could have filed an appeal. The

---

[6] In fact, the principal opinion states that the motion court need only investigate abandonment "when *the record* raises" such a presumption and when "*the record* refutes the claim of abandonment" no such inquiry is required. Slip op. at 16-17 (emphasis added).

failure to do so results from Vogl's own lack of diligence at the time his initial motion was dismissed.

There is one additional concern with allowing unfettered "motions to reopen" a post-conviction proceeding. In my view, this Court should refuse to permit "motions to reopen" filed outside of the normal time limit to preserve potential relief under federal habeas corpus proceedings. In denying relief in *Gehrke*, this Court stated as follows:

> Federal habeas corpus proceedings require a movant to exhaust all available state remedies, including appeal and postconviction remedies, before bringing a federal claim. *See Coleman v. Thompson,* 501 U.S. 722, 731 (1991). State court remedies are exhausted "when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo,* 548 U.S. 81, 92–93 (2006). If the scope of abandonment were expanded further, it is foreseeable that federal habeas corpus claims could be denied due to a movant's failure to bring a motion to reopen postconviction proceedings. This would frustrate the legitimate goals of a prompt comprehensive review and finality.

*Gehrke*, 280 S.W.3d at 59.

I understand that this result may appear unsympathetic because Vogl did not have counsel to guide him through the appeals process. However, as the record demonstrates, Vogl discovered all of his claims and prepared all of the motions leading to this third motion on his own, without counsel. The record also suggests that, on multiple occasions, Vogl reached out to his appointed post-conviction counsel, who answered several of Vogl's questions about filing this third motion. Furthermore, in post-conviction proceedings, Rule 30.03 allows the movant to seek leave to file a notice of appeal out of time within 12 months of the judgment becoming final.[7] This gave Vogl a

---

[7] Rule 30.03 provides:

full year to collect all the information that is now the basis for his third Rule 24.035 motion and seek leave to appeal.[8]

## The Principal Opinion's Discussion of "Counsel's Failure to Ascertain" is Unnecessary

Had Vogl asserted his claim in a timely manner, he likely would have alleged sufficient facts that, if true, would have proven that he was abandoned by post-conviction counsel under this Court's recent definition of "abandonment" in *Price v. State*, 422 S.W.3d 292 (Mo. banc 2014). This Court made clear in *Price* that "abandonment" by post-conviction counsel occurs only in one of two situations: 1) when appointed post-conviction counsel fails to comply with Rule 24.035(e) by failing to file either an amended motion or a statement explaining why no amended motion is required or 2) when appointed post-conviction counsel files an untimely amended motion. *Id.* at 297-98. Vogl's third Rule 24.035 motion alleged sufficient facts that, if true, would prove that his post-conviction counsel failed to file either an amended motion or a

---

> Where the defendant or the state has the right of appeal *including appeals from an order in a post-conviction proceeding involving a prior felony conviction*, but notice of appeal is not filed with the clerk of the trial court within ten days after the judgment becomes final, the defendant or the state may file a notice of appeal in the trial court if, within twelve months after the judgment becomes final, a motion for leave to file such notice is filed in the appropriate appellate court and it thereafter sustains the motion and grants such leave.

(Emphasis added).

[8] In addition to the rule allowing late appeals, Rule 74.06 permits a court to entertain motions seeking relief from a judgment or order. Among the reasons for relieving a party from a final judgment are that the judgment "is no longer equitable for the judgment to remain in force" and "excusable neglect." Rule 74.06(b)(1) and (5). Such motions must be made within a reasonable time and, for certain provisions, not more than one year. This rule has not been cited by any party, but it is permitted by this Court's rules. Even this available procedure would be preferred to ignoring this Court's clear and express rule prohibiting the filing of a successive Rule 24.035 motion.

15

statement explaining why no amended motion was required. Vogl alleges his post-conviction counsel's only action was to file a motion to rescind his appointment as counsel on the ground that Vogl's initial motion was untimely. Counsel's motion to rescind appointment did not meet the basic requirements of Rule 24.035(e); therefore, Vogl's allegations, if proven, would constitute abandonment.

Despite the fact that this straightforward analysis resolves the issue, the principal opinion could be misconstrued to extend the abandonment doctrine into an evaluation of whether counsel met its "duty to ascertain" whether a movant has timely filed the *pro se* motion required by Rule 24.035. This analysis is neither necessary for the principal opinion's resolution of this case, nor supported by this Court's precedent.

The opinion specifically holds, "Here, Mr. Vogl's appointed counsel failed to comply with Rule 24.035(e) because he did not file either an amended motion or a statement setting out facts demonstrating that counsel took actions to ensure why no amended motion was needed." This holding renders the principal opinion's discussion of the "duty to ascertain" unnecessary, and in my view, the discussion will lead to a resurgence of multiple "motions to reopen" or alternatively correctly titled "motions for relief due to abandonment" that are nothing more than re-characterized claims of ineffective assistance of post-conviction counsel.[9]

---

[9] Moreover, *Moore v. State*, cited by the principal opinion as authority for the proposition that appointed post-conviction counsel's "failure to ascertain" all of the facts relevant to a movant's *pro se* motion, does not hold that such a failure actually amounts to abandonment. Rather, *Moore* stands for the rather unremarkable proposition that when the record shows *on its face* that counsel has failed to comply with the post-conviction rules, counsel will be presumed to have abandoned the movant. 934 S.W.2d 289, 292 (Mo. banc 1996). *Moore* remanded a case to the

16

## *Res Judicata* Prohibits Vogl's Second Abandonment Claim

The principal opinion suggests that the *res judicata* issue is raised "*sua sponte*." The principal opinion notes that the State has not asserted that Vogl's prior motions constituted a "procedural bar" to the adjudication of his current motion. However, the "failure" to raise this issue at this point does not constitute a waiver of the issue. The post-conviction rules do not require a responsive pleading. Rule 24.035(g). In this case, the State did not file a responsive pleading because the circuit court swiftly denied relief without one, specifically pointing to its previous judgment overruling the original claim of abandonment. Therefore, the State has not "waived" any claim that Vogl was not abandoned, including that Vogl's claim is barred by *res judicata* due to his failure to perfect either his original post-conviction appeal or the appeal of his original abandonment claim.

> *Res Judicata* is an affirmative defense. Ordinarily, the party seeking to benefit by it must either plead in an answer, raise it by an amendment to the pleadings, or present it by motion to dismiss. However, it is a defense that not only benefits the defending party, but also benefits the court's ability to efficiently administer justice.

> In this regard, the United States Supreme Court has recognized:

circuit court because counsel's statement why no amended motion was filed indicated that counsel had done nothing other than to file the statement. *Id. Moore*'s holding stems from the fact that the Court determined that counsel essentially did nothing at all, not that counsel failed to ascertain facts that would have led to a colorable claim. *Id.* Counsel's failure to perform an adequate investigation is a matter of the effectiveness of counsel and, therefore, categorically unreviewable. This is perfectly demonstrated by the two cases that the principal opinion overrules, *Stewart v. State*, 261 S.W.3d 678 (Mo. App. 2008), and *Morgan v. State*, 8 S.W.3d 151 (Mo. App. 1999). The movant in each case alleged that post-conviction counsel had abandoned him by failing to investigate the timeliness of the *pro se* motion. The court of appeals in each case held that such an allegation was better characterized as one for ineffective assistance of post-conviction counsel.

17

> "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underling res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste."

*Arizona v. California*, 530 U.S. 392, 412 (2000).

*Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*, 119 S.W.3d 551, 555 (Mo. App. 2003) (some internal citations omitted). Moreover, this Court has stated that, although *res judicata* is an affirmative defense, it need not be asserted in a responsive pleading because *res judicata* is in essence an allegation that the plaintiff has failed to state a claim upon which relief may be granted. *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 n.1 (Mo. banc 2002). As such, *res judicata* may be raised in a motion to dismiss. *Id.*

As pointed out in *Koepke*, while caution should be exercised in applying *res judicata sua sponte*, a well recognized exception to this caution exists when the defense arises out of the court's own earlier judgment. That is exactly what this Court is reviewing here—the motion court expressly referenced its previous judgment denying abandonment relief in its judgment denying relief on this motion. Under these facts, it is totally inappropriate for this Court to hold that ruling is "clearly erroneous." In my view, the judicially efficient resolution is to deny relief now rather than remand and require the State to file a motion to dismiss that the motion court will surely sustain.

The principal opinion suggests that the Court should not review, *sua sponte*, the issue of *res judicata* because the "motion court dismissed Mr. Vogl's current abandonment claim as procedurally barred . . . Mr. Vogl's claim of abandonment has never been adjudicated on the merits." However, the motion court's 2011 order states that the circuit court would take no action on Vogl's claims of abandonment because Vogl failed to timely file his original motion. Or, in other words, because Vogl had not filed a timely original motion, the motion court determined that he could not have been abandoned by counsel. Moreover, any failure to obtain a final adjudication would stem from Vogl's own failure to appeal his initial motion and his failure to perfect his second appeal. To state that Vogl has not received a final adjudication of his abandonment claim is to: 1) ignore the language of the motion court's order; 2) ignore Vogl's multiple failures to pursue his abandonment claims through the procedures available to him; and 3) ignore the fact that, until the principal opinion overruled *Stewart v. State* and *Morgan v. State* today, Vogl's claims were considered claims of ineffective assistance of post-conviction counsel and not abandonment.

As Judge Wilson's dissent points out, even assuming that the motion court's 2011 order dismissed Vogl's abandonment claims "without prejudice,"

> A dismissal without prejudice may operate to preclude the party from bringing another action for the same cause and may be *res judicata* of what the judgment actually decided. *Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d 503, 506 (Mo. banc 1991). An appeal from such a dismissal can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum. *City of Chesterfield v. Deshetler Homes,* 938 S.W.2d 671, 673 (Mo.App.1997).

19

*Chromalloy American Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997); *see also Naylor Senior Citizens Housing, LP v. Side Const. Co.*, 423 S.W.3d 238, 242-43 (Mo. banc 2014). Clearly, both Vogl and the court of appeals believed that the circuit court's order terminated the litigation in 2011, as evidenced by Vogl's appeal from that order. Because the express terms of the order terminated the litigation so that Vogl would have a final judgment to appeal the motion court's ruling, the subsequent abandonment litigation is barred by *res judicata*.

This Court has an obligation to ensure compliance with its post-conviction rules. *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012). In *Dorris*, this Court specifically held that the time limitations for the post-conviction rules cannot be waived by either party. 360 S.W.3d at 270. This Court held that the time limitations established by the rules for post-conviction relief were mandatory to preserve the finality of judgments and could not be waived. *Id.* In my view, this same conclusion applies to the post-conviction rules prohibiting successive motions. Because permitting successive motions frustrates the post-conviction relief system's need for finality, the State may not "waive" the rule violation, either inadvertently or purposefully. My view that this second abandonment claim is barred by *res judicata* is in accord with this Court's recent statement that parties cannot concede or stipulate to legal issues. *State v. Hardin*, 429 S.W.3d 417, 421 n.4 (Mo. banc 2014) (stating that the State could not concede that the defendant had been subject to double jeopardy).

Lastly, "this Court will affirm on any ground that supports the circuit court's judgment, regardless of the grounds on which the circuit court relied." *Stanley v. State*,

20

420 S.W.3d 532, 543 n.9 (Mo. banc 2014); *see also Rizzo v. State*, 189 S.W.3d 576, 578 (Mo. banc 2006). While it could be argued that the precise grounds on which the motion court overruled this third motion are not clear, it appears that the motion court ruled, without the issue having been raised by the State, that its rulings on Vogl's prior motions prohibited the requested relief. In light of the docket entry and this Court's ability to affirm on any ground that supports the judgment, the determination that Vogl's current claim of abandonment is barred by *res judicata* should be addressed at this time.

**Conclusion**

I disagree with the principal opinion's holding that the abandonment doctrine entitles Vogl to file a third Rule 24.035 motion. Vogl had a remedy available to him years ago when the motion court dismissed his initial motion. At that time, Vogl could have appealed the dismissal of his motion pursuant to Rule 24.035(k) or sought to vacate the judgment within the time period allowed by Rule 75.01. Because he failed to pursue these available remedies, Vogl is not entitled to relief now. Rule 24.035(l) specifically prohibits successive post-conviction relief motions. To grant Vogl a remand for a merits hearing on his allegations of abandonment, whether his motion is characterized as a "motion to reopen" or "motion for post-conviction relief due to abandonment" is to ignore the plain language of Rule 24.035(l).

In *McDaris*, this Court stated that the motion court should examine abandonment prior to ruling on the motion by discussing the issue with post-conviction counsel and allowing the post-conviction movant to reply. *McDaris* stated that this procedure should stand until such time as this Court changed its rules. This Court has not changed its rules

21

to permit a different procedure for determining abandonment claims despite its authority to do so.

For the reasons stated above, I would affirm the judgment.  I also concur in the opinion of Judge Wilson that *res judicata* bars Vogl from re-litigating his abandonment claim.

_____
Zel M. Fischer, Judge

22



# SUPREME COURT OF MISSOURI
## en banc

MARK D. VOGL,                         )
                                        )
         Appellant,         )
                                          )
     v.                     )       No. SC93157
                                          )
STATE OF MISSOURI,            )
                                          )
         Respondent.     )

## DISSENTING OPINION

The majority opinion holds that, when the counsel appointed to represent an inmate pursuant to Rule 24.035(e) does not file an amended motion or a statement explaining why no amended motion is necessary, the inmate either can object to such "abandonment" in the motion court and/or assert that claim on appeal as the inmates did in *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), and *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991), or the inmate can wait several years and then file a "motion for post-conviction relief due to abandonment."  Regardless of the merits of this holding, the Court is wrong to announce and apply it to Mr. Vogl in this case.

As explained below, the 2012 motion that the majority opinion holds should have been granted by the trial court was Mr. Vogl's **second** abandonment motion, not his first. His first abandonment motion is identical to the present one in all material respects except that it was filed in 2011, more than 14 months before the motion at issue in this

case. The trial court denied Mr. Vogl's first abandonment motion (just as it later denied the motion now before this Court), and Mr. Vogl appealed that first denial (just as he now appeals the second). But that is where the similarities end. Mr. Vogl never filed the record in his first appeal and, as a result, it was dismissed. Because Mr. Vogl already took the second chance to raise his abandonment claim that the majority opinion holds he should have, there is no need or reason to give him a third. Accordingly, I respectfully dissent.

The majority opinion recites that Mr. Vogl's initial post-conviction motion was denied as untimely on April 22, 2008, and he concedes that he did not ask the motion court to reconsider or vacate that decision under Rules 75.01 or 74.06. Mr. Vogl also made no effort to seek appellate review of this dismissal, either within 10 days after it became final (which, because Mr. Vogl made no motion for reconsideration, was 30 days after its entry) or anytime within the following year under Rule 30.03 (which allows the appellate court to grant leave for such a late filing "for good cause shown").

The majority opinion then recites that, in 2012, Mr. Vogl filed a motion alleging that he had been abandoned by his appointed counsel in 2008 and seeking to have the motion court hear and determine the merits of his Rule 24.035 claims that had been improperly dismissed as a result of that abandonment. Finally, the majority opinion recites that Mr. Vogl's abandonment motion was denied on May 21, 2012, that he appealed this denial, and that his appeal is now before this Court pursuant to article V, section 10 of the Missouri Constitution.

2

But, between 2008 (when his initial post-conviction motion was denied) and 2012 (when he filed the abandonment motion that is now before this Court), there was another very important chapter to Mr. Vogl's procedural story. On March 17, 2011, more than 14 months before he filed the motion that is now before this Court, Mr. Vogl filed his first motion alleging that he had been abandoned by his appointed counsel in 2008 and seeking to have the motion court hear and determine the merits of his Rule 24.035 claims that were improperly dismissed as a result of that abandonment.[1]

Attached to this first abandonment motion are the same exhibits that the majority opinion analyzes from his second motion: (a) the 2010 correspondence between Mr. Vogl and the Jasper County circuit clerk's office; (b) the letter and motion from appointed counsel requesting the motion court to rescind appointment because Mr. Vogl's initial *pro se* motion was filed too late under Rule 24.035; and (c) the motion court's 2008 order rescinding counsel's appointment and dismissing Mr. Vogl's motion for post-conviction relief as untimely. Mr. Vogl alleges in his first abandonment motion, as he does in his second, that his *pro se* Rule 24.035 motion was not untimely in 2008, that his appointed counsel's concession on this issue was "without proper merit," and that this abandonment by appointed counsel deprived him of meaningful review of the claims he had raised in his 2008 motion for post-conviction relief.

---

[1] Mr. Vogl includes a copy of his first abandonment motion in his legal file for this case, as well as the correspondence from the appellate division of the Public Defender System (which did not represent Mr. Vogl at the time) stating it had reviewed his motion and recommending he file it.

The motion court denied Mr. Vogl's first abandonment motion on November 4, 2011, just as it later would deny his second abandonment motion six months later.[2] Mr. Vogl appealed this November 4 denial to the Missouri Court of Appeals, Southern District, where his appeal was assigned Case No. 31797. Four months later, however, Mr. Vogl had not filed his record on appeal. Pursuant to Rule 84.08, therefore, the appellate court warned Mr. Vogl that his appeal would be dismissed unless he filed the required documents or demonstrated good cause why dismissal should not be ordered. He did neither, and Mr. Vogl's appeal from the trial court's denial of his first abandonment motion was dismissed.

Rule 24.035(l) plainly states: "The circuit court shall not entertain successive motions." Even if the majority opinion is correct that this language does not prohibit an inmate from filing a "motion for post-conviction relief due to abandonment" after having previously filed (and been denied) a motion for post-conviction relief, there is nothing in the language of Rule 24.035(l) that justifies allowing an inmate to file a *second* "motion for post-conviction relief due to abandonment" when he has previously filed (and been denied) a *first* "motion for post-conviction relief due to abandonment."

---

[2] The majority opinion insists that the "motion court dismissed Mr. Vogl's current [second] abandonment claim as procedurally barred on the ground that his Rule 24.035 action was dismissed with prejudice for the untimely filing of his original *pro se* motion and Mr. Vogl's claim of abandonment never has been adjudicated on the merits[.]" Maj. Op. at 4, n.4. That is a fair reading of the motion court's order denying Mr. Vogl's first abandonment motion on November 4, 2011, but it is not a fair reading of the motion court's ruling denying the second abandonment motion, i.e., the denial at issue here. Here, the motion court explicitly notes that it denied a previous motion from Mr. Vogl on the same ground seeking the same relief.

4

If Mr. Vogl had managed to file the record in his appeal from the 2011 denial of his first abandonment motion (as he managed to do in this case and as *pro se* inmates manage to do in hundreds of post-conviction appeals every year), all that has occurred in this appeal could have – and perhaps would have – occurred in that one. But he did not do so, and that appeal was dismissed. No matter how compelling the issues he might have raised then would have been, and no matter how wrong the trial court may have been in denying Mr. Vogl's first abandonment motion in 2011 under the majority opinion's reasoning here, there simply is no justification for ignoring the fact that Mr. Vogl did not file his second abandonment motion (the denial of which is now before the Court) until after he failed to perfect his appeal from the denial of his first abandonment motion.[3]

Even assuming that the majority opinion is correct that Mr. Vogl had a right to assert an abandonment claim years after failing to assert that claim in the motion and

---

[3] The majority opinion suggests that the dismissal of Mr. Vogl's first abandonment motion has no preclusive effect because it was not decided "on the merits." The trial court denied both motions on the same grounds (and, as to Mr. Vogl's second abandonment motion, on the additional ground that the court had denied relief to Vogl regarding abandonment in his first motion). The majority opinion offers no reason why the second denial is appealable but the first denial was not. A dismissal has preclusive effect on any issue it decides, and it is this preclusive effect that makes the dismissal appealable. *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997). Accordingly, either: (a) the denial of Vogl's first abandonment motion was preclusive on the question of whether abandonment can be asserted years after the post-conviction motion was denied and, because it was preclusive on this point, the dismissal was appealable (as the court of appeals plainly concluded it was); or (b) the denial of Mr. Vogl's first abandonment motion was not preclusive on that issue and, because it was not preclusive, it was not appealable. The majority opinion does not choose (b) because, under that approach, the denial of Vogl's second motion also cannot be appealed. On the other hand, if the answer is (a) and the denial of an abandonment motion is appealable – which the majority opinion plainly holds it is – then all of the arguments raised and adopted here could have been raised and adopted in Mr. Vogl's appeal from the denial of his first abandonment motion. The fact that he failed to pursue that appeal does not mean it did not happen.

5

appellate courts in 2008 (or 2009), Mr. Vogl exercised that right in 2011 when he filed his first abandonment motion. It may well have been error for the motion court to deny Mr. Vogl's first abandonment motion just as the majority opinion concludes it was error to deny his second; but we will never know. Mr. Vogl's failure to perfect his appeal from the denial of his first motion waived all claims of error regarding that denial. He cannot simply ignore the disposition of his first abandonment motion in the hopes of relitigating the same issues now in a second motion. Accordingly, the Court is wrong to reach the issues it resolves in this case, and I respectfully dissent from its having done so.[4]

_____
Paul C. Wilson, Judge

---

[4] The majority opinion chides the author for raising this issue *sua sponte*, noting that the state did not raise the preclusive effect of Mr. Vogl's first abandonment motion below. It is difficult to see how the state could have raised this issue when it was under no obligation to file a responsive pleading to Mr. Vogl's second abandonment motion and, as a practical matter, had no opportunity to raise that issue (or anything else) before the trial court denied the motion. Presumably, it will do so on remand. There is no need to put the parties through this exercise, however, as this Court repeatedly has held that "motion courts and appellate courts have a 'duty to enforce the mandatory time limits and the resulting complete waiver in the postconviction rules – even if the State does not raise the issue.'" *Price v. State*, 422 S.W.3d 292, 297 (Mo. banc 2014) (quoting *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012)). There is no reason this "duty" also should not extend to "enforcing" the clear prohibition against successive post-conviction motions found in Rules 24.035(l) and 29.15(l). To say that this prohibition does not extend to successive post-conviction motions based on abandonment because nothing in Rules 24.035 and 29.15 recognizes post-conviction motions based on abandonment simply proves too much.